Joyce Ann BURDINE,
Plaintiff-Appellant,

v.

**TEXAS DEPARTMENT OF COMMUNITY AFFAIRS, Defendant-Appellee.**

No. 77–1101.

United States Court of Appeals,
Fifth Circuit.

Dec. 17, 1979.

Hubert L. Gill, Austin, Tex., for plaintiff-appellant.

John L. Hill, Atty. Gen. of Texas, Roland H. Allen, Richard Scott Rafes, Asst. Attys. Gen., Austin, Tex., for defendant-appellee.

Before JONES, CHARLES CLARK and GEE, Circuit Judges.

GEE, Circuit Judge:

This employment discrimination case grew out of events occurring within the Texas Department of Community Affairs in late 1972 and in the spring of 1973. As with all employment discrimination cases, the facts are crucial to the outcome.

Appellant Joyce Burdine, a forty-year-old female, was hired in January 1972 by the Texas Department of Community Affairs (TDCA) as an accounting clerk in the Public Service Careers Division (PSC). She had previously acquired several years of experience in the field of manpower training. The PSC's purpose was to provide training and employment opportunities in the public sector for under-skilled persons. Burdine was promoted in July 1972 to Field Services Coordinator. The Project Director of PSC at that time, Mack Nealy, assigned appellant additional duties in early October 1972 and put her in charge of the division when he was out of the office. Nealy resigned from his position in mid-October, and John Malone, Nealy's former supervisor, assigned appellant additional duties in November 1972. However, Burdine was not promoted or given an increase in pay. Burdine made several oral and written applications for the job of Project Director but received no reply of any kind. She performed the extra duties assigned to her for approximately six months.

The United States Department of Labor (DOL) totally funded PSC; in February 1973 DOL gave written notice to B. R. Fuller, the Executive Director of TDCA, that the PSC project would be terminated as of the end of March 1973 because of alleged inefficiencies in the program.[1] Appellant assisted Fuller in preparing a reply to the DOL charges; negotiations were begun to seek continuation of the project. DOL approved the continuation of PSC on March 20, 1973, but approval was conditioned on the division's meeting certain requirements. These requirements included, among other matters, the appointment of a permanent Project Director and a reorganization of and reduction in the staff. DOL gave no specific orders as to who should be retained, discharged, or appointed but required only that final staff selections meet with DOL's approval.

Fuller consulted with persons whom he considered to be key advisers in the agency and asked for their recommendations for the position of Project Director. Following these consultations, he selected Robert Watts for the post; at that time Watts worked for another division within TDCA. On the advice of subordinates, Fuller decided to terminate Burdine on April 2 and to retain Allen Walz, who had previously been under appellant's supervision, and to promote Walz to Project Coordinator, a position essentially filled by Burdine before her discharge. The decision to terminate Burdine came after her request, based on her assumption that PSC faced extinction, that she be considered for any suitable position within the agency. Her actions made it clear that she wished to remain with TDCA.

Soon after her termination and after she filed a charge of discrimination with the EEOC, the appellant was rehired by TDCA in July 1973 as a Planning Assistant with a monthly salary of $968, the exact salary given to Walz upon his promotion on April

---

1. DOL cited, among other problems, lack of fiscal control, failure to properly document expenditures, payments made on expired contracts, overstaffing, lack of a Project Director, insufficient communication and training within PSC staff, and questionable eligibility of some enrollees.

1, 1973.[2] Since her reinstatement, Burdine's promotions and increased job responsibilities have enabled her to achieve approximately the salary and duties of the male Project Director. Walz resigned in 1974.

Burdine complains that she has been discriminated against on account of sex in three ways: in TDCA's transferring Robert Watts instead of promoting her to Project Director; in TDCA's discharging her while retaining and promoting Allen Walz; and in TDCA's requiring her to perform essentially the same duties as the Project Director without compensating her equally with the male Project Directors who held the post both before her and after her. The trial court found against plaintiff on all three issues. We shall refer to portions of the court's memorandum opinion in the course of our discussion of each issue.

### Plaintiff's Burden in Title VII Cases

■ Appellee contends that plaintiffs in Title VII[3] cases brought against a government agency must prove discriminatory intent and relies on *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). We rejected that blanket contention in *Scott v. City of Anniston*, 597 F.2d 897 (5th Cir. 1979). However, where plaintiff alleges disparate *treatment* under Title VII, as does plaintiff-appellant here, "[p]roof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment." *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 1854 n.15, 52 L.Ed.2d 396 (1977).[4] Therefore, we accept defendant-appellee's contention, although not for the reasons

cited in its brief; proof must have been made at trial that defendant treated Ms. Burdine differently *because* she is female.

### Standard of Review

■ Although discrimination is a question of fact, it is also the ultimate issue for resolution in a Title VII case. Therefore, we as an appellate court must independently determine the merits of plaintiff's allegations, but we are bound by findings of subsidiary facts (evidentiary facts) that are not clearly erroneous. *East v. Romine, Inc.,* 518 F.2d 332, 339 (5th Cir. 1975). We must also determine whether the ultimate finding is based on requisite subsidiary facts. *Id.* at 339, *citing Humphrey v. Southwestern Portland Cement Co.,* 488 F.2d 691, 694 (5th Cir. 1974).

### Hiring the Project Director

■ Plaintiff contends that, by transferring Robert Watts, a male, instead of promoting her to Project Director, defendant discriminated against her on account of sex.[5] The elements of such cases are clear. In order to establish a prima facie case, plaintiff must show that (1) she belongs to a group protected by Title VII, (2) she applied for and was qualified for a job for which the employer was seeking applicants, (3) despite her qualifications she was rejected, and (4) after her rejection the position remained open and the employer continued to seek applicants among persons having plaintiff's qualifications. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). These elements may differ, depending on the factual context. *Id.* at 802 n.13, 93 S.Ct. 1817. We believe plaintiff's proof at trial clearly

**2.** Walz' salary before his retention and promotion was $590 per month.

**3.** 42 U.S.C. § 2000e *et seq.*

**4.** The same footnote in *Teamsters,* however, makes clear that proof of motive is not needed when a Title VII plaintiff alleges disparate *impact.*

**5.** 42 U.S.C. § 2000e–2(a) provides:
It shall be an unlawful employment practice for an employer—
(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . .

met the *Green* criteria. She is protected under Title VII from sex discrimination. She applied for the Project Director's job several times and was considered for the job, and her proof that she was qualified received implicit support from defendant's evidence.[6] The employer rejected her and, after the position remained unfilled for several months, hired a male for the position.

■ Defendant may refute plaintiff's prima facie case by articulating a legitimate, nondiscriminatory reason for the rejection. *Id.* This court requires defendant to prove nondiscriminatory reasons by a preponderance of the evidence. *Turner v. Texas Instruments,* 555 F.2d 1251, 1255 (5th Cir. 1977). This holding is not inconsistent with *Board of Trustees v. Sweeney,* 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978), which merely stated that defendant is not required to prove absence of discriminatory motive. Our holding in *Turner* simply states the obvious: "articulating" a legitimate reason involves more than merely stating fictitious reasons; *legally sufficient* proof is needed before the trier of fact can find plaintiff's proof rebutted. *Turner, supra* at 1255.

■ In *East v. Romine, Inc.,* 518 F.2d 332 (5th Cir. 1975), this court added another element to defendant's rebuttal in disparate treatment cases: defendant must prove that those he hired or promoted were somehow *better* qualified than was plaintiff; in other words, comparative evidence is needed. An assertion, for example, that plaintiff had a poor work history will not suffice

unless defendant can show by comparative factual data that those hired or promoted had a better work history. *Id.* at 339–40.

■ TDCA introduced testimony that the male who was hired as Project Director, Robert Watts, was better qualified than Burdine. Fuller testified that Watts had a college degree and had done advanced· work; Fuller also cited Watts' experience in administration and his ability to work well with others. Burdine, on the other hand, attended college for only one year and had no degree; Fuller also felt that she had had some difficulty with her co-workers. While Fuller admitted that the Project Director need have no degree, we believe that the trial court's implicit evidentiary finding that Watts was better qualified is not clearly erroneous. Thus, the court's holding[7] that TDCA did not discriminate against Burdine in its failure to promote her to Project Director is affirmed.[8]

*Retention and Promotion of Walz and Discharge of Burdine*

■ Applying *East's* authority to make an independent determination of plaintiff's allegations, we must disagree with the trial court's findings in regard to Burdine's discharge. The trial court, in addition to its holding quoted in note 7, *supra,* held:

[T]he decision about who should be terminated, as required by the reduction in force mandated by DOL, was made on a non-sexual basis. The three individuals who were terminated, Plaintiff [and two

6. For example, on cross-examination, Fuller refused to state that plaintiff was not qualified to be Project Director; he merely asserted that Watts was better qualified.

7. Specifically, the trial court stated:
This court can find no evidence that indicates that the decision not to give the plaintiff a position in the reorganized PSC Division was based on any sexual discrimination. The court finds that these decisions were based on a good-faith, rational evaluation of the *relative qualifications* of the parties in question and what would be in the best interest of the PSC program.
(emphasis added). It will be noted that the memorandum opinion of the trial court is silent

on whether plaintiff made out a prima facie case. However, since we uphold an implicit finding that defendant successfully rebutted plaintiff's case, this lack is immaterial to the outcome here.

8. Once plaintiff's prima facie case has been successfully rebutted, plaintiff must be given "a fair opportunity to show that [the employer's] stated reason for . . . rejection was in fact pretext." *McDonnell Douglas v. Green,* 411 U.S. 792, 804, 93 S.Ct. 1817, 1825, 36 L.Ed.2d 668 (1973). Since plaintiff does not complain about lack of opportunity to prove pretext, we assume that she had that opportunity and failed to carry that burden of proof.

others], did not work well with each other and had some disagreements, and in light of DOL's concern about a lack of communication within the staff and other considerations, it was certainly a rational decision for defendant to terminate those parties who had had some problems in the PSC program.

Here again plaintiff met *Green's* first three elements. She proved that she sought continuing employment with TDCA and was qualified to do the job that Allen Walz was retained and promoted to do. In fact, she had been doing that job, and more, for six months when terminated.

In discharge cases involving disparate treatment incident to a reduction in force, we can articulate *Green's* fourth element thus: after her discharge, the employer hired nonminority personnel having qualifications no better than plaintiff's, or retained those having lesser ones, for positions comparable to hers. *Cf. Marks v. Prattco, Inc.,* No. 79–1394, 607 F.2d 1153 (5th Cir. 1979) (discharge case not involving reduction in force). She meets that element as well. Plaintiff's evidence was uncontroverted by any of defendant's evidence; moreover, much of defendant's evidence substantiated plaintiff's prima facie case.[9]

In rebuttal, defendant's evidence falls short of the standard required by *Turner* and *East.* Defendant failed to introduce comparative factual data concerning Burdine and Walz. Fuller merely testified that he discharged and retained personnel in the spring shakeup at TDCA primarily on the recommendations of subordinates and that he considered Walz qualified for the position he was retained to do. Fuller failed to specify any objective criteria on which he based the decision to discharge Burdine and retain Walz. He stated only that the action was in the best interest of the program and that there had been some friction within the department that might be alleviated by Burdine's discharge. Nothing in the record indicates whether he examined Walz' ability to work well with others. This court in *East* found such unsubstantiated assertions of "qualification" and "prior work record" insufficient absent data that will allow a true *comparison* of the individuals hired and rejected. Plaintiff's evidence showed that she supervised Walz before her discharge; defendant admitted that she had more seniority and knowledge of the PSC program than Walz. After her employer placed her in a position of great responsibility without the necessary authority to deal with recalcitrant staff personnel, the employer seems to have discharged her for not being able to do the job smoothly and hired a less experienced male for the job.

Defendant's bald assertion that Walz was "qualified" will not support the district court's holding if we employ *East's* rebuttal standard. Neither will defendant's reliance on subjective evaluations and recommendations by subordinates, *see, e. g., Watkins v. Scott Paper Co.,* 530 F.2d 1159 (5th Cir.), *cert. denied,* 429 U.S. 861, 97 S.Ct. 163, 50 L.Ed.2d 139 (1976), particularly where the employer must take some responsibility for the "friction" between plaintiff and staff personnel and where no comparative data were introduced to evaluate either Walz' behavior in the same situation or his relationship with the two employees who were discharged along with the plaintiff.[10]

Defendant relies heavily on the fact that DOL mandated the reduction in staff and also required TDCA to submit the name of the Project Director and the other proposed personnel changes to DOL for approval. The trial court likewise seems to have relied on this intervention by DOL and DOL's

---

9. Fuller admitted that Burdine had more experience in manpower programs than Walz and had trained Walz for the job he held before her discharge.

10. The problems within the PSC staff predated Burdine's assumption of the Project Director's duties. At least one of the two persons terminated along with Burdine had caused Nealy, before the latter's resignation, considerable difficulty, and Nealy expressed, in a letter to Fuller, grave concern about the employee's behavior. Burdine later encountered problems in dealing with the same employee and detailed them in a memo to Malone.

eventual approval of the actions taken with regard to plaintiff. However, defendant's evidence failed to show that DOL would not have approved plaintiff as Project Director or that DOL required or even suggested to TDCA that it terminate plaintiff and retain Walz.

To say that defendant's decision was rational begs the issue; an employer may be rational and still intend to discriminate on account of race or sex. Plaintiff successfully proved intent by making out a prima facie case against TDCA on this issue, and defendant's evidence is insufficient to rebut the proof of intent here. Thus, since TDCA failed to rebut plaintiff's prima facie case as regards her discharge and Walz' retention, we must reverse the trial court on this issue.[11] We remand this issue to the trial court for determination of damages and attorney's fees.

### The Equal Pay Claim

Plaintiff contends that TDCA violated her rights under the equal pay provision of Title VII.[12] The last sentence of that provision incorporates the defenses found in the Equal Pay Act.[13] That Act allows pay differentials if based on unequal skill, effort, or responsibility[14] and articulates four defenses. The only defense arguably applicable here is that the unequal pay was not based on sex.

Plaintiff's burden in this pay case is to prove that a wage differential is based on sex and that there was performance of equal work for unequal compensation. *Orr v. Frank R. MacNeill & Son,* 511 F.2d 166 (5th Cir.), *cert. denied,* 423 U.S. 865, 96 S.Ct. 125, 46 L.Ed.2d 94 (1975). The jobs need not be identical, only substantially equal. *Id.*

The plaintiff's evidence showed that she was given additional duties and responsibilities after Nealy resigned and that she fulfilled substantially all of the functions of Project Director. Testimony and other evidence showed that Nealy, before he resigned, made $1,179 per month as Project Director; Burdine received no raise and continued making approximately $900 per month after she assumed most of his duties. Malone, Nealy's supervisor, was given a raise during this time period, ostensibly to compensate him for his added duties as "acting director," most, if not all, of which duties he had delegated to Burdine. Watts'

---

11. While the trial court failed to make specific findings either that plaintiff established a prima facie case or that defendant was successful in rebuttal, we need not remand for further fact-findings on liability, since we find that a prima facie case was made out as a matter of law and that defendant's proof falls far short of rebuttal standards set by our case law.

12. 42 U.S.C. § 2000e–2(h) states:
Notwithstanding any other provision in this title, it shall not be an unlawful employment practice for an employer to apply different standards of compensation, or different terms, conditions, or privileges of employment pursuant to a bona fide seniority or merit system, or a system which measures earnings by quantity or quality of production or to employees who work in different locations, provided that such differences are not the result of an intention to discriminate because of race, color, religion, sex, or national origin, nor shall it be an unlawful employment practice for an employer to give and to act upon the results of any professionally developed ability test provided that such test, its administration or action upon the results is not designed, intended or used to discriminate because of race, color, religion, sex or national origin. *It shall not be an unlawful employment practice under this title for any employer to differentiate upon the basis of sex in determining the amount of the wages or compensation paid or to be paid to employees of such employer if such differentiation is authorized by the provisions of section 6(d) of the Fair Labor Standards Act of 1938, as amended.*
(emphasis added).

13. 29 U.S.C. § 206(d).

14. The Ninth Circuit recently held that Title VII is broader in scope than the Equal Pay Act and that the latter applies only where plaintiff contends there has been a denial of equal pay for equal work. *Gunther v. County of Washington,* 602 F.2d 882 (9th Cir. 1979). In a case involving comparable but not substantially equal work, only the Equal Pay Act's four affirmative defenses, but not its equal work requirement, are incorporated into Title VII. *Id.* Since plaintiff here claims to have done substantially equal work, we need not decide now whether we would follow the lead of that circuit.

salary on assuming the Project Director's post was $1,259 per month.

We think this evidence, if credible, establishes a prima facie case of discriminatory pay differential. Her factual proof tends to establish that her employer paid her "at a rate less than the rate at which he pays wages to [male] employees . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility . . . ." 29 U.S.C. § 206(d); *see Ammons v. Zia Co.,* 448 F.2d 117 (10th Cir. 1971). However, some of defendant's evidence, if credible, tended to show that the work was not equal.[15]

The trial court made no finding that plaintiff had (or had not) been doing work substantially equal to that of the Project Director. It recognized that she had been assigned extra duties but stated that "the evidence . . . indicates that other individuals within TDCA, both male and female, have on occasions been temporarily given additional duties without any increase in pay or promotion." The court thus found that plaintiff had failed to prove the pay differential was caused by sex discrimination.

We must remand this issue to the district court. On remand the court should make specific findings on whether plaintiff established a prima facie case and, if so, whether defendant successfully rebutted that case with evidence showing either that the work was not substantially equal or that the pay differential was based on a factor other than sex. We would observe here, however, that if the work is substantially equal, a bare, self-serving, general assertion that employees are frequently assigned extra duties at no increase in pay will not serve to rebut a prima facie case. This is true especially in light of plaintiff's documentary proof that she assumed extra duties for about six months; that her pay was substantially lower than the two male employees who did that work before and after her; and that her male supervisor received additional compensation for "increased responsi-

bilities and work load," yet she, not he, assumed some of those burdens. More specific facts are needed to rebut this evidence: How long were other employees required to perform extra work? What were the pay differentials involved on the other occasions? What was the sex of the employees in the other instances?

In conclusion, we summarize our holding. The trial court's finding that there was no sex discrimination in defendant's appointment of Robert Watts as Project Director is affirmed. We do find that defendant discriminated against plaintiff on account of her sex when it terminated her and retained and promoted Allen Walz. On remand the trial court should award plaintiff back pay based on Walz' salary for the months during which plaintiff was not employed by defendant, mitigated by any other earnings or unemployment compensation plaintiff may have received or that it concludes she should by reasonable efforts have obtained. *See Guerra v. Roma Independent School District,* 444 F.Supp. 812, 822 n.9 (S.D.Tex.1977). We also remand for the trial court to enter findings on whether plaintiff established a prima facie case under the equal pay provision of Title VII and, if so, whether defendant's evidence rebuts that case.

Since plaintiff has prevailed on one issue, the trial court should also consider the matter of awarding attorney's fees; such fees should ordinarily be recovered by prevailing Title VII plaintiffs in all but special circumstances. *Christianburg Garment Co. v. EEOC,* 434 U.S. 412, 98 S.Ct. 694, 698, 54 L.Ed.2d 648 (1978); *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 716 (5th Cir. 1974).

AFFIRMED in part, REVERSED in part, and REMANDED.

---

**15.** Fuller testified that he did not regard Burdine as acting Project Director and that other people had some responsibility for PSC's administration.