893 F.2d 1189
 52 Fair Empl.Prac.Cas. 71, 52 Empl. Prac.
Dec. P 39,662
INCREASE MINORITY PARTICIPATION BY AFFIRMATIVE CHANGE TODAY
OF NORTHWEST FLORIDA, INC. (IMPACT), on behalf of itself and
its members, Diann Walker, Louvenia Jones, Pearlie Williams,
Gracie Holton, Rosa Henderson, Delores Colston, Charles
Stewart, Barbara King, Dorothy Roberts, Plaintiffs-Appellants,
Jacqueline Ross, Linda Issac, Intervenors-Appellants,
and
Clifford Simmons, Marguerite Stewart, Plaintiffs,
v.
George FIRESTONE, as Secretary of the State of Florida,
State of Florida, Defendants-Appellees.
INCREASE MINORITY PARTICIPATION BY AFFIRMATIVE CHANGE TODAY
OF NORTHWEST FLORIDA, INC. (IMPACT), on behalf of itself and
its members, Diann Walker, Louvenia Jones, Pearlie Williams,
Gracie Holton, Rosa Henderson, Delores Colston, Charles
Stewart, Barbara King, and Dorothy Roberts, on behalf of
themselves and all others similarly situated, Plaintiffs-Appellants,
Clifford Simmons and Marguerite Stewart, Plaintiffs,
Jacqueline Ross and Linda Issac, Intervenors-Appellants,
v.
George FIRESTONE, as Secretary of State of the State of
Florida, and State of Florida, Defendants-Appellees.
 Nos. 86-3623, 86-3727.
 United States Court of Appeals,
Eleventh Circuit.
 Feb. 6, 1990.
 
 Jerry Traynham, Patterson & Traynham, Tallahassee, Fla., for plaintiffs-appellants.
 Kent Spriggs, Spriggs & Warren, Tallahassee, Fla., for Charles Stewart & Intervenors.
 Bruce A. Minnick, Asst. Atty. Gen., Tallahassee, Fla., Richard M. Dunn, Dunn & Dresnick, P.A., Miami, Fla., for defendants-appellees in No. 86-3623.
 Bruce A. Minnick, Asst. Atty. Gen., Harry F. Chiles, Tallahassee, Fla., Richard M. Dunn, Dunn & Dresnick, P.A., Miami, Fla., for defendants-appellees in No. 86-3727.
 Appeals from the United States District Court for the Northern District of Florida.
 Before JOHNSON and EDMONDSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.
 TUTTLE, Senior Circuit Judge:
 
 
 1
 This is an appeal by the plaintiffs and intervenors from a judgment in a non-jury civil rights action in which the trial court decided all claims against the plaintiffs and intervenors.
 
 I. STATEMENT OF THE CASE
 
 2
 Plaintiff Increase Minority Participation by Affirmative Change Today of Northwest Florida, Inc. (IMPACT), on behalf of its members named in the title (supra ), Clifford Simmons, and Marguerite Stewart, filed this civil rights action in 1979 against George Firestone as Secretary of State of the State of Florida and against the State itself, seeking injunctive and monetary relief from the alleged racially discriminatory practices of the defendants in hiring and promotions of black persons by the State and its officials.
 
 
 3
 The action was originally filed as a class action, was certified as such, and continued as such for approximately five years when the trial court decertified the class action, stating as a ground for doing so, that the record disclosed insufficient financing available to permit counsel properly to represent the class.[1]
 
 
 4
 Subsequently, the trial court dismissed the plaintiffs' motion to require discovery of the examinations and tests and test scores of the plaintiff applicants and those of the successful employees. The plaintiffs later filed a motion to recertify the class which the court, after a hearing, denied. At the same time, it dismissed the organizational plaintiff, IMPACT, as a party to the litigation. The court held that IMPACT had no separate interest apart from that of the individual plaintiffs, and therefore, did not have standing.
 
 
 5
 The case was set for trial for March 28, 1986. On March 7, plaintiffs filed an emergency motion requesting the court to expedite its disposition of the pending motions requiring information regarding the employment examinations and other employment information. On March 26, the court held that employment tests were not an issue in the litigation but required that answers to some of the interrogatories be furnished.[2] This motion had been pending before the court for two years. The case went to trial on April 1.
 
 
 6
 Following the plaintiffs' case-in-chief, the court dismissed all disparate impact claims and dismissed the individual claims of Gracie Holton. The court issued its opinion styled "Findings of Fact and Conclusions of Law and Final Judgment" on August 11, 1986. In its memorandum, the court decided all claims against the plaintiffs and intervenors.
 
 
 7
 Much of the plaintiffs' proof was developed from the personnel records maintained by the defendants. The trial court did not decide whether, in any of the cases, the plaintiffs made out a prima facie case. However, the court proceeded to consider the defendants' explanation on the assumption that prima facie cases had been made out on all of the plaintiffs' claims.
 
 The trial court stated:
 
 8
 In this case the defendant contends that the person believed to be most qualified was hired unless friendship or political connections played some role. In every instance the defendant denies that race affected the decision. Making that statement satisfied the defendants' light burden [under Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) ].
 
 II. SUMMARY OF FACTS
 
 9
 Without attempting to determine from the testimony and records introduced during the 11 day trial whether every plaintiff or intervenor made out a prima facie case, it is perfectly clear that all of the intervenors, proved that they were black employees, they had made applications for the specified positions, that the positions had been filled by another person, and that, in most if not all cases, that other person was white. Moreover, the proof adequately showed that each of the applicants was qualified for the position sought.[3] In each case, also, the position remained open after the plaintiff had been denied the appointment. In some of the personnel records introduced by the plaintiffs or the defendants, it is clear that with respect to either education, prior experience, or training, the applicant was superior to that of the successful applicant. It is also clear from some of the personnel records that the white applicant was superior on one or more of the same "qualifications." With respect to others, the plaintiffs offered no proof as to the relative qualifications of the successful applicant.
 
 
 10
 The defendants' principal personnel official, who was first employed by the defendant in 1984, after the case had been pending nearly five years, testified that it was the general practice of the defendant to hire the "most qualified" applicant. There was no testimony as to what the defendants considered as a "qualification." Nor was there even any testimony by any person who made the employment decision that the particular selectee was chosen as better qualified.
 
 
 11
 The plaintiff tendered its expert witness, Dr. Dyson, for the purpose of analyzing the evidence of employment actions by the defendants. His testimony, if it had been accepted by the trial court, was clearly sufficient to establish a statistical disparity between the employment actions taken in favor of black applicants as against those taken in favor of whites. However, the defendants also produced an expert witness who used a different benchmark and database than those used by plaintiffs' expert and the court determined that Dr. Dyson "was qualified to make the mathematical calculations he performed. However, Dr. Dyson is a political scientist, not a statistician or economist, and he testified about matters beyond his expertise." The court rejected Dr. Dyson's testimony in favor of that of the defendants' expert and rejected his statistical evidence.
 
 
 12
 The Assistant Secretary of State, testifying for the defendants, gave evidence that the final selection of each employee was intended to be, and actually was, subjective.[4] There was ample evidence in the record that the overwhelming proportion of the persons making the hiring decision were white persons.
 
 III. ISSUES ON APPEAL
 
 13
 (1) Did the defendants properly articulate "a legitimate non-discriminatory reason" for the employment decisions when the trial court assumed that a prima facie case had been made out by the plaintiffs?
 
 
 14
 (2) Whether the trial court erred in not making a specific finding that a prima facie case had been made out, based on the expert testimony offered by plaintiffs.
 
 
 15
 (3) Whether the trial court erred in not recertifying the case as a class action.
 
 
 16
 (4) Did the trial court err in eliminating the employment examination issue?
 
 
 17
 (5) Did the court improperly dismiss the claims of plaintiff Holton?
 
 
 18
 These are the only claims we think merit attention on appeal.
 
 IV. DISCUSSION
 A. Defendants' Burden of Production
 
 19
 1. Underlying the entire judgment of the trial court is plaintiffs' contention that the trial court, once it assumed that prima facie cases had been made out by the plaintiffs and intervenors, erred in failing to require the defendants adequately to "articulate some legitimate, non-discriminatory reason" for its employment actions. The Supreme Court in Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), carefully described the burden that shifts to the defendant once a prima facie case is made out. The Court there said:
 
 
 20
 The burden that shifts to the defendant, therefore, is to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, non-discriminatory reason. The defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant.
 
 
 21
 450 U.S. at 254-55, 101 S.Ct. 1089, 1095 (emphasis added).
 
 
 22
 As pointed out above, the trial court here held that the defendants had satisfied the requirement under Burdine merely by contending that the person believed to be most qualified was hired and because the defendants denied that race affected the decision. The Court said: "Making that statement satisfied the defendants' light burden."
 
 
 23
 Appellees contend here that the trial court's standard of articulation is somehow supported by this Court's decision in Perryman v. Johnson Products Co., Inc., 698 F.2d 1138 (11th Cir.1983). In that case, we stated that after a prima facie case had been made by the plaintiff:
 
 
 24
 ... the defendant's burden of rebuttal is exceedingly light; 'the defendant need not persuade the court that it was actually motivated by the proffered reasons.... It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.' [Burdine ] [450 U.S.] at 254-55 [101 S.Ct. at 1094]. At this stage of the inquiry, the defendant need not persuade the court that its proffered reasons are legitimate.
 
 
 25
 698 F.2d at 1142.
 
 
 26
 Based on this statement, appellees seem to be urging that in Perryman, we, in some way, lightened the burden of articulation as carefully mandated in Burdine. Of course, this is far from the truth. The statement that the burden was exceedingly light referred to the following part of the quotation which pointed out that there was no burden on the defendant to actually "prove" its reason. We did not mean, and of course we could not have meant, to hold that the burden of articulation was any less than that provided by the Supreme Court in Burdine. Therefore, the continued reference by the trial court to the "light," or "exceedingly light" burden on the defendants has no place in our consideration of this issue. The burden, of course, is precisely as stated in the above quotation from Burdine.
 
 
 27
 Appellees, by their brief here, attempt to support the trial court's statements by saying: "in other words, in order to satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact to rationally conclude that the employment decision was not racially motivated." Appellees' Br. p. 7 (emphasis added). In other words, appellees contend it is sufficient if they introduced evidence showing dissimilarities in two applicants' records so that the court could then decide which was better qualified.
 
 
 28
 It is clear, therefore, that the trial court adopted an incorrect standard by which to weigh the purported reasons given for the employment actions.
 
 
 29
 2. Furthermore, it is clear that the trial court erred in determining that in each of the more than 60 claims with which it dealt and as to which it assumed the establishment of a prima facie case, the defendants had satisfied the requirements of Burdine. In not a single case, did the defendants offer proof by any person who made the employment decision, or by any other person, stating that the decision was made on the basis of what he or she thought demonstrated the best qualified person. Moreover, the statement by the personnel director, Kassees, that it was the general practice of the department to select the best qualified, would not satisfy the requirements. He, of course, could not testify as to the basis of selection of the many selectees before he was employed in 1984. Moreover, each applicant is entitled to have his or her individual claim considered separately, not as one "in general." Moreover, the mere statement that the State selected the "best qualified" would be insufficient to satisfy the Burdine requirements. Qualifications for selection of an employee can depend upon seniority, length of service in the same position, personal characteristics, general education, technical training, experience in comparable work or any combination of them. A mere statement that the employer hired the best qualified person leaves no opportunity for the employee to rebut the given reason as a pretext, which the employee must do if a proper reason is articulated.
 
 
 30
 The Supreme Court made perfectly clear in Burdine the reason for requiring the introduction of admissible evidence of the actual reason for the action taken. The Court stated:
 
 
 31
 Placing this burden of production on the defendant thus serves simultaneously to meet the plaintiff's prima facie case by presenting a legitimate reason for the action and to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext. The sufficiency of the defendant's evidence should be evaluated by the extent to which it fulfills these functions.
 
 
 32
 450 U.S. at 255-56, 101 S.Ct. at 1094 (emphasis added). This, of course, means that the plaintiff must be given a fair opportunity to cross-examine the defendant's witnesses as to the actual reason which is testified to.
 
 
 33
 As pointed out above, the record does disclose that at least in some of the claims of some of the intervenors, the black applicant either had more seniority, more general education, or more experience on the particular job than the person who was given the position, but such claimant was not given the opportunity to rebut the claim of the State that the selectee was better "qualified" because no witness testified to the particular qualification that was used by defendants.
 
 
 34
 This Court has expressly held that under Burdine, there must be "evidence that asserted reasons for discharge were actually relied on" or "the reasons are not sufficient to meet defendant's rebuttal burden." Lee v. Russell County Board of Education, 684 F.2d 769, 775 (11th Cir.1982) (citing Tanner v. McCall, 625 F.2d 1183, 1195 n. 21 (5th Cir.1980), cert. denied, 451 U.S. 907, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981)); see also Uviedo v. Steves Sash & Door Co., 738 F.2d 1425, 1429 (5th Cir.1984), cert. denied, 474 U.S. 1054, 106 S.Ct. 791, 88 L.Ed.2d 769 (1986). There, the Court stated:
 
 
 35
 Appellant next argues that the record is replete with nondiscriminatory reasons for [its employment actions].... The difficulty here, however, is that the defendant never articulated to the magistrate that these were in fact the reasons for the particular challenged action.
 
 
 36
 (Emphasis in original).
 
 
 37
 In this case, the defendants offered no evidence explaining any employment decision. The Court spoke in terms of the defendants' "claim" that all employees were selected on the basis of qualifications. Such a "claim," not supported by admissible evidence, did no more than allow defendants to furnish a resume from which the trial court then made its determination that the person selected was better qualified than the black applicant. Introducing personnel records which may have indicated that the employer based its decisions on one or more of the possible valid grounds did not suffice.
 
 
 38
 We must, therefore, remand the case to the district court for it to determine whether a prima facie case was made out by any of the claimants on any of their claims.[5]
 
 B. The Expert Witness
 
 39
 Appellants contend that the trial court erred in not accepting the opinion testimony of their expert, Dr. Dyson. They contend that the trial court improperly rejected Dr. Dyson's testimony on the ground that he was not a statistician or economist. As we have stated above, if the court had accepted Dr. Dyson's testimony, there clearly would have been sufficient evidence from which the court could have found that the plaintiffs had made out a prima facie case. However, the decision by a trial court on the competency of, and what weight should be given to the testimony of, an expert is a highly discretionary one. Ludlow Corporation v. Textile Rubber Chemical Co., Inc., 636 F.2d 1057, 1060 (5th Cir.1981). We are not prepared to find that the court's decision in this matter was an abuse of its discretion.
 
 C. The Class Action
 
 40
 The record discloses much support for the appellants' contention that the trial court did not adequately require the defendants to respond to the interrogatories which they filed early in the litigation. The record discloses that the basis for the trial court's decertifying the class was the court's decision that the class lacked the financing necessary adequately to carry the action to a conclusion. However, that fact was in turn based upon an estimate of costs which the appellants stated could be obviated if the court required the defendants to furnish the additional information sought by appellants. Now that the trial court has had a full opportunity to observe the handling of the case, which, in effect, was still tried in many respects as if it were a class action, it will be in a position to give further consideration to its decision to deny recertification when moved for by the appellants. This issue will remain open for consideration by the trial court on remand.
 
 D. Employment Examinations
 
 41
 On several occasions during the pendency of this action, appellants filed motions with the trial court, seeking to have the court require defendants to furnish information on the examination given to respective candidates for the positions at issue in this case and the scores of the several applicants. Shortly before trial, the trial court declined to require such information and held that the validity of the employment examinations, and the information concerning them, was not a proper part of this Title VII litigation. Defendants contended, and the court held, that plaintiffs' claims that the test was discriminatory were not a part of their EEO charge and investigation and that the plaintiffs therefore lacked standing to raise this issue.
 
 
 42
 This Court has held: "[T]he filing of a charge of discrimination with the EEOC is a condition precedent to the bringing of a civil action under Title VII." Sanchez v. Standard Brands, Inc., 431 F.2d 455, 460 (5th Cir.1970). However, in Sanchez, we also stated: "[T]he specific words of the charge of discrimination need not presage with literary exactitude the judicial pleadings which may follow." 431 F.2d at 465. We have also held that "[t]he judicial complaint is limited to the scope of the administrative investigation which could reasonably be expected to grow out of the charge of discrimination." Griffin v. Carlin, 755 F.2d 1516, 1522 (11th Cir.1985). We are convinced that it would be reasonable to investigate the employment examination issue based on the broad charges made by the plaintiffs.
 
 
 43
 Appellees also support their argument that the court correctly eliminated the examinations from consideration because they contend that the appellants lacked standing to sue. They base their contention largely upon their assertion that not a single one of the appellants had "failed" an exam, and that therefore they could not have been injured by the exam, no matter how discriminatory it may have been. Defendants overlook completely the fact that there was evidence to the effect that one of the elements considered by the selector for any of these positions was the relative test scores received by the applicants on the examinations. We conclude, therefore, that the plaintiffs had standing to raise this issue and the court erred in eliminating it from the case.[6]
 
 
 44
 E. Breach of Plaintiff Holton's Conciliation Agreement
 
 
 45
 Before becoming a party to this litigation, plaintiff Gracie Holton made a charge of discrimination. This charge resulted in a conciliation agreement between Holton and the employer. Although she received the position she originally sought following the signing of the conciliation agreement, she claims that the agreement was breached in other respects. The trial court dismissed this claim at the conclusion of plaintiff's evidence because, as the court stated, the underlying discrimination problem had been resolved. The appellees contend that Holton has not exhausted her administrative remedies, but they overlook the fact that this Court has held that: "[T]here is no need for the filing of timely charges with regard to the breach of a Title VII conciliation agreement; such agreements can be enforced in federal court in the absence of any charges." Eatmon v. Bristol Steel & Iron Works, Inc., 769 F.2d 1503, 1510 n. 8 (11th Cir.1985). In Eatmon, we stated that:the crucial factor to Title VII jurisdiction [in the federal court] over these types of cases is not EEOC participation. It is furtherance of the congressional goal of conciliation and voluntary compliance with Title VII....
 
 
 46
 Failure to permit these agreements to be enforced in federal court under Title VII could frustrate the congressional goal of compliance through conciliation.
 
 
 47
 Id. at 1512.
 
 
 48
 It is clear, therefore, that the trial court erred in dismissing the Holton claim for lack of jurisdiction.
 
 V. CONCLUSION
 
 49
 The judgment of the trial court is therefore REVERSED and the case is REMANDED for further proceedings consistent with this opinion.
 
 
 50
 EDMONDSON, Circuit Judge, concurring in part and dissenting in part:
 
 
 51
 I concur in the court's opinion and judgment except for two points: I think (1) the district court's decertification of the plaintiff class was not an abuse of discretion; and (2) the district court's finding of no intentional discrimination--a finding of fact--is not clearly erroneous. I would affirm the judgment on these points.
 
 
 52
 "Questions concerning class certification are left to the sound discretion of the district court." Cox v. American Cast Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir.1986); General Telephone Co. of the Southwest v. Falcon, 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982). Under some circumstances, decertification may be required where "it becomes apparent that [adequate] representation is not being afforded." Guerine v. J & W Investment, Inc., 544 F.2d 863, 864 (5th Cir.1977). Such determination "is a question of fact that depends on each peculiar set of circumstances." Id. The district court held a hearing on decertification and found that counsel was no longer capable of adequately representing the class. After reviewing the record, I conclude that the decertification was not an abuse of discretion.
 
 
 53
 My second point, however, presents the chief reason that I write separately: to stress--in the light of Supreme Court precedent--the need to normalize the trials of employment discrimination cases. To me, the most important aspect of this case is that plaintiffs had the ultimate burden of persuading the trier of fact that defendants intentionally discriminated against plaintiffs. The second most important aspect is that the case comes to us after a full trial, that is, the proceedings were not stopped by the grant of a motion.
 
 
 54
 Because the case was fully tried, a ritualistic McDonnell Douglas or Burdine analysis[1] need not be pursued to uphold the district court's judgment on these disparate treatment claims. See United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 715-16, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983) (after trial, courts must decide whether discrimination was proved; no need to make "inquiry even more difficult by applying legal rules which were devised to govern 'the basic allocation of burdens and order of presentation of proof,' Burdine, 450 U.S. at 252, 101 S.Ct. at 1093"). "Where, as here, a disparate treatment case is fully tried, a Court should proceed directly to the ultimate question of intentional discrimination." Moore v. Alabama State Univ., 864 F.2d 103, 105 (11th Cir.1989); accord Powers v. Alabama Dep't of Educ., 854 F.2d 1285, 1290 (11th Cir.1988) (after trial, "court generally should not refer to the various 'stages of proof' "). "[T]he only issue to be decided at that point is whether the plaintiffs have actually proved discrimination." Bazemore v. Friday, 478 U.S. 385, 398, 106 S.Ct. 3000, 3007, 92 L.Ed.2d 315 (1986).
 
 
 55
 The Supreme Court has consistently held that the McDonnell Douglas framework is not set in stone. See Burdine, 450 U.S. at 253-54 n. 6, 101 S.Ct. at 1093-94 n. 6; Furnco Const. Corp. v. Waters, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978) ("The method suggested in McDonnell Douglas for pursuing this inquiry ... was never intended to be rigid, mechanized, or ritualistic."); International Bhd. of Teamsters v. United States, 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977) ("The importance of McDonnell Douglas lies, not in its specification of the discrete elements of proof there required, but in its recognition of the general principle that any Title VII plaintiff must carry the initial burden of offering evidence adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the Act."); McDonnell Douglas, 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13.
 
 
 56
 A finding of intentional discrimination or of no intentional discrimination is a finding of fact. See Anderson v. City of Bessemer, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). We should view the case as any other trial in which the district judge sits as factfinder and therefore apply the "clearly erroneous" standard. Id.; Bazemore, 478 U.S. at 398, 106 S.Ct. at 3007. Contrary to the implication of today's opinion, nothing in Burdine precludes disposal of a case under the clearly erroneous standard after conclusion of a full trial on the merits. Burdine, 450 U.S. at 260 n. 12, 101 S.Ct. at 1097 n. 12.
 
 
 57
 After hearing the evidence and observing the parties in the courtroom, the trial judge made elaborate findings about each plaintiff's case. Adequate evidence supported the district judge's findings that plaintiffs failed to prove that they were rejected for or that someone else was preferred for promotion on account of race; the findings were not clearly erroneous.
 
 
 58
 Plaintiffs' case of disparate treatment consisted of testimony by each plaintiff that he or she had applied for an open position, had been facially qualified, had been rejected, and that a white employee had been chosen. Plaintiffs' evidence was extremely sketchy.[2] The district court found that "[p]laintiffs presented their case as if the burden was on the defendant to produce all of the information and all of the explanations merely upon the making of a general charge that discrimination existed." Walker, et al. v. Firestone, etc., No. TCA 79-895-MMP, slip op. at 4 (N.D.Fla. Aug. 4, 1986). The district court elaborated:
 
 
 59
 [M]ore often than not these plaintiffs could not identify who got the position, let alone whether they were truly better qualified. ... In response, plaintiffs' counsel engaged in the highly irregular procedure of reading names and exhibit numbers into the record when plaintiffs' memories failed. ... Time after time, even after engaging in this practice, plaintiffs failed to prove that the selectee in fact did not have higher qualifications and that the defendant used this reason as a pretext for engaging in discriminatory decisionmaking.
 
 
 60
 Id. at 8. The district court never determined whether plaintiffs made out a prima facie case.[3] Nevertheless, defendants pinpointed each challenged employment action (to the extent plaintiffs could identify them) and introduced much testimony and other evidence supporting the employment actions.
 
 
 61
 Defendants put on six days of testimony by supervisors of plaintiffs and by officials of the Florida Department of State. Defendants also introduced into evidence plaintiffs' personnel files, including work evaluations and job applications. Furthermore, defendants introduced into evidence the files of the successful applicants for each of the positions for which plaintiffs allegedly applied.[4] Through direct testimony, defense witnesses explained the contents of these files and traced the qualifications of each applicant.[5]
 
 
 62
 Considering defendants' evidence, no mystery cloaked defendants' position about why plaintiffs were not promoted. Thomas Gardner, the Assistant Secretary of State in charge of administrative matters since 1981, and several other supervisors testified that the practice of the Florida Department of State was to hire and to promote the most qualified applicants. Such testimony alone might be insufficient to meet defendants' burden of producing evidence of a legitimate nondiscriminatory reason for the employment actions. Defendants went substantially further, however, by producing evidence of applicant qualifications.
 
 
 63
 Defendants introduced evidence of the successful applicants' qualifications and produced records and other testimony which cast clouds on the qualifications of plaintiffs. Defendants presented evidence of facts that bore on the decisions to reject plaintiffs for promotion: dismissal for physically striking a supervisor; failure to take a qualifying exam at the suggestion of the supervisor; a history of conditional and unsatisfactory evaluations by both black and white supervisors; a poor attendance record; rudeness to customers; excessive errors; disruptive and loud behavior; failure to listen to criticism; lack of motivation and initiative; attendance of an unaccredited college; and misrepresentation of educational qualifications on an employment application.
 
 
 64
 In addition to presenting evidence of the relative qualifications of the employees who were promoted compared to plaintiffs, defendants introduced evidence directly attacking plaintiffs' own proof. As part of the prima facie case, plaintiff must show that she was "in fact denied an available position." Patterson v. McLean Credit Union, --- U.S. ----, 109 S.Ct. 2363, 2378 n. 7, 105 L.Ed.2d 132 (1989) (emphasis in original). A number of the positions plaintiffs characterized as "job openings" were not in fact openings, but rather increases in grade of current employees created by the addition of new tasks to job descriptions. Some alleged "job openings" did not exist. Other "job openings" had been filled on an emergency basis by individuals who were groomed for the positions months before the job advertisements. For still others, plaintiffs simply did not meet the minimum qualifications; or the successful candidate was a nonwhite or the decisionmaker was a nonwhite, belying the presumption of discriminatory animus. Moreover, it is not clear that plaintiffs ever submitted applications for a number of the positions allegedly denied them.
 
 
 65
 The record supports the trial court's judgment, but today's court avoids treating employment discrimination the same as any other factual question put to a judge as factfinder. Instead the court dictates, in an unprecedented way, how defendants in an employment discrimination action must present their case. The court says that the trial court committed reversible error because the trial court allowed defendants to rely heavily on circumstantial evidence to respond to plaintiffs' case based on circumstantial evidence.
 
 
 66
 Although this case was fully tried, plaintiffs and today's court invoke Burdine's order-of-presentation-of-proof language. Specifically, they contend that defendants failed to meet an obligation to present an issue of fact for trial because defendants did not call witnesses to say for each employment action, "I promoted ______, who I believed to be the most qualified person because ..." But at least where, as here, plaintiffs' case is a circumstantial one, nothing in the law (including Burdine ) demands such specific and direct evidence from defendants. As in any lawsuit, in employment discrimination cases defendants as well as plaintiffs may make their case with either circumstantial or direct evidence. Cf. Aikens, 460 U.S. at 714 n. 3, 103 S.Ct. at 1481 n. 3.
 
 
 67
 Plaintiffs' argument that defendants must produce pointed oral testimony[6] was rejected by this court in Perryman v. Johnson Products Co., Inc., 698 F.2d 1138, 1141, 1144 (11th Cir.1983). In Perryman, we reversed and vacated a trial court finding that defendant "ha[d] not articulated any legitimate, non-discriminatory reasons for its actions" where the defense had "urged that [the decisionmaker's] decisions were based on objective factors such as prior experience, education, and job performance," and where the defense had introduced evidence of comparative qualifications. 698 F.2d at 1144. We held that defendant's proffer of comparative qualifications met its burden of production although the person who made the final decisions on hiring, promotion, and termination never testified about the actual reasons for the employment actions.
 
 
 68
 For a plaintiff to prevail in an employment discrimination case, she is not required to make a showing that she was in fact better qualified than the person chosen for the position. Patterson, 109 S.Ct. at 2379. Plaintiffs "are not limited to presenting evidence of a certain type" to establish pretext. Id. Likewise, defendants are not limited to presenting evidence of a certain type or forced to pursue a particular means to respond to plaintiff's circumstantial case.
 
 
 69
 The teaching of Burdine[7] and Patterson[8], and even more plainly of Aikens[9], is that employment discrimination trials are normal trials and that the lower federal courts have been wrong to view these trials as arcane proceedings governed by rigid mechanized formulae imposing special burdens and constraints on the parties. Reviewed as we normally review nonjury cases after a full trial, the trial judge's findings on racial discrimination here would be affirmed because they could not be described as clearly erroneous. Still we reverse. With today's decision, the court continues its resistance to the normalization of employment discrimination trials. I regret that the court is continuing in this direction. Further development of arcane rules of trial procedure does nothing to eradicate employment discrimination, but does make the trial court's job more difficult and does lead to more "errors" in trials with the result being greater expenditures of time, energy, and money on retrials.
 
 
 
 [1]
 The trial court based this decision on counsel's statement supporting a motion by plaintiffs to order prompt compliance with plaintiffs' interrogatories that had been pending for months at that time. Counsel stated that the cost of the litigation would amount to something between $30,000 and $50,000, whereas a court order requiring immediate compliance would save substantial amounts. The court referred to the $30,000 to $50,000 cost as the basis for decertifying the class, although counsel at that time stated that the finances supporting the claim had been substantially improved
 
 
 [2]
 The interrogatories which the court required to be answered asked for the following information:
 a. Full name
 b. Social security number
 c. Address
 d. Telephone number
 e. Race
 f. Sex
 g. Positions applied for, or certified for
 h. Date of each eligibility
 The court ordered: "Defendants are directed to provide plaintiffs with the register information concerning individuals who applied for positions with the Department of State or [in?] Leon County from 1972 to date."
 
 
 [3]
 The personnel director for the defendants gave evidence that the only persons considered by the "selector" of the successful applicant were those who had already been determined to be qualified for the post
 
 
 [4]
 On cross-examination, he was asked the question:
 Q: Basically, the decision to hire after you get past the T and E process is a subjective one?
 A: There is no doubt about that. Wherever individuals are involved, you have subjectivity.
 Q: And there is no real check on what the hiring people do except T and E?
 A: In general, that's true.
 The term "T and E" used in this quote refers to the original qualification for employment or promotion. All applicants must have satisfied the T and E before they could be considered.
 
 
 [5]
 We make this reference to the dissenting opinion. The opinion states as one of its essential parts that the case comes to us after a full trial. The opinion states:
 Because the case was fully tried a ritualistic McDonnell Douglas or Burdine analysis need not be pursued to uphold the district court's judgment on these disparate treatment claims. See United States Postal Service Board of Governors v. Aikens, 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1985).
 The dissent fails to recognize that in the Aikens case, the Court spoke of it as a "fully tried" case only because the requirements set out in Burdine had been fully met. The Court stated:
 By establishing a prima facie case, the plaintiff in a Title VII action creates a rebuttable "presumption that the employer unlawfully discriminated against" him. Texas Department of Community Affairs v. Burdine, supra, [450 U.S.] at 254 [101 S.Ct. at 1094]. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 [93 S.Ct. 1817, 36 L.Ed.2d 668] (1973). To rebut this presumption, "the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection." Burdine, 450 U.S. at 255 [101 S.Ct. at 1094]. In other words, the defendant must "produc[e] evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." Id. at 254 [101 S.Ct. at 1094].
 But when the defendant fails to persuade the district court to dismiss the action for lack of a prima facie case, and responds to the plaintiff's proof by offering evidence of the reason for the plaintiff's rejection, the fact finder must then decide whether the rejection was discriminatory within the meaning of Title VII. At this stage, the McDonnell-Burdine presumption "drops from the case," 450 U.S. at 255, n. 10 [101 S.Ct. at 1094-1095, n. 10], and "the factual inquiry proceeds to a new level of specificity." Id. at 255 [101 S.Ct. at 1094]. After Aikens presented his evidence to the District Court in this case, the Postal Service's witnesses testified that he was not promoted because he had turned down several lateral transfers that would have broadened his Postal Service experience. See Tr. 311-313, 318-320, 325; App. to Pet. for Cert. 53a. The District Court was then in a position to decide the ultimate factual issue in the case.
 460 U.S. at 715, 103 S.Ct. at 1481 (emphasis added).
 We also question the statement in the dissent: "As in any lawsuit, in employment discrimination cases defendants as well as plaintiffs may make their case with either circumstantial or direct evidence. Cf. Aikens, 460 U.S. at 714 n. 3, 103 S.Ct. at 1481 n. 3." There is nothing in Aikens that states that defendants may rely on circumstantial evidence in satisfying the requirement that they must articulate their reasons by admissible evidence. The cited note in Aikens states: "As in any lawsuit, the plaintiff may prove his case by direct or circumstantial evidence." (Emphasis added). It is difficult to understand how a claimed articulation by circumstantial evidence could meet the carefully stated requirements of Burdine that the reasons given are to be given "with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext. The sufficiency of defendant's evidence should be evaluated by the extent to which it fulfills these functions." 450 U.S. at 255-56, 101 S.Ct. at 1094. We construe the Court's language to require evidence of a sort that will give a fair opportunity to cross-examine the defendant's witnesses as to the actual reason which is testified to.
 
 
 [6]
 In fact, one of the intervenors received a letter of rejection from defendants stating that one of the reasons for the rejection was that the other applicant had a higher test score on the examination
 
 
 [1]
 "In McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), [the Supreme Court] set forth the basic allocation of burdens and order of presentation of proof in a Title VII case alleging discriminatory treatment. First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reasons for the employee's rejection.' Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reason offered by the defendant were not its true reasons, but were a pretext for discrimination." Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981) (citations and footnotes omitted)
 
 
 [2]
 The district court noted that "roughly 61% of the specific claims in this case [were] based on hiring decisions made after this lawsuit was filed." Given the pendency of the lawsuit, the district court was "at a loss to understand the plaintiffs' general lack of information concerning what job was applied for, when, and who received it." Walker, et al. v. Firestone, etc., No. TCA 79-895-MMP, slip op. at 4 (N.D.Fla. Aug. 4, 1986)
 
 
 [3]
 Defendant moved for involuntary dismissal at the end of plaintiffs' evidence, but the court never ruled on the motion. "[W]hen defendant fails to persuade the district court to dismiss the action for lack of a prima facie case, and responds to plaintiff's proof by offering evidence of the reason for the plaintiff's rejection, the factfinder must then decide whether the rejection was discriminatory within the meaning of Title VII. At this stage the McDonnell-Burdine presumption 'drops from the case,' and 'the factual inquiry proceeds to a new level of specificity.' " Aikens, 460 U.S. at 714-15, 103 S.Ct. at 1481-82 (citations omitted)
 With respect to each claim the district court, "[a]ssuming without deciding that plaintiff made a prima facie case," concluded that "the evidence does not support plaintiff's claim." Walker, slip op. at 13. This conclusion should preclude the necessity of a remand for determination of whether plaintiffs had made out a prima facie case. The district court has no obligation to articulate in its opinion whether a prima facie case has been made out if, upon consideration of all the evidence, the trial court is convinced there was no intentional discrimination.
 
 
 [4]
 Plaintiffs, on hearsay grounds, objected to the introduction of job applications. The applications were admissible, if not for the truth of their contents, then as nonhearsay for what was represented to defendants about the applicants' qualifications. An employer might properly choose an applicant whose resume showed more experience than a rival's. That the information on the resume is ultimately false would not undermine the resume or application as evidence to support the legitimacy of an employment decision
 
 
 [5]
 The district court, however, limited the testimony by defense witnesses on the qualification or lack of qualification of plaintiffs for the particular position applied. The court sustained plaintiffs' objection to testimony where the defense witness had no personal knowledge of the circumstances under which the decision was made
 
 
 [6]
 To support the argument, plaintiffs and the court rely on Lee v. Russell Board of Education, 684 F.2d 769, 775 (11th Cir.1982), and Uviedo v. Steves Sash & Door Co., 738 F.2d 1425 (5th Cir.1984). Neither decision is precedent for what the court does today. This case differs from Lee because in this case the reason advanced by defense witnesses (promotion of the best qualified) is the same as that credited by the trial court. Unlike Uviedo (an opinion not binding on us in any event), defendants have produced oral and documentary evidence to show their reasons for not promoting plaintiffs and did not merely rely on background testimony of plaintiffs' witnesses
 
 
 [7]
 The Supreme Court in Burdine vacated a Fifth Circuit decision, Burdine v. Texas Dep't of Community Affairs, 608 F.2d 563 (5th Cir.1979), that required a defendant, faced with a prima facie case, to "prove by a preponderance of the evidence that legitimate, nondiscriminatory reasons for the discharge existed" and to "prove that those he hired ... were somehow better qualified than was plaintiff." Burdine, 450 U.S. at 256, 101 S.Ct. at 1095 (emphasis in original). The Supreme Court held that the Fifth Circuit misconstrued McDonnell Douglas and "exceed[ed] what properly can be demanded to satisfy a burden of production" when it placed on the defendant "the burden of persuading the court that it had convincing, objective reasons for preferring the chosen applicant above the plaintiff." Id. at 257, 101 S.Ct. at 1095-96
 
 
 [8]
 The Supreme Court in Patterson reversed a Fourth Circuit decision affirming a verdict for the defendants where the judge erroneously "instructed the jury that in order to succeed petitioner was required to make [a] ... showing that she was in fact better qualified than the person chosen for the position." 109 S.Ct. at 2378. The Court held that a plaintiff "may not be forced to pursue any particular means of demonstrating that respondent's stated reasons are pretextual." Id. at 2378-79
 As in other cases, the Patterson court held that "[t]he evidence which petitioner can present ... may take a variety of forms." Id. at 2378; see, e.g., Bazemore, 478 U.S. at 400, 106 S.Ct. at 3009 (reversing and remanding for district court to consider, in a class action, circumstantial evidence of discrimination provided by a less than perfect salary regression analysis with the caveat that "[a] plaintiff in a Title VII suit need not prove discrimination with scientific certainty; rather, his or her burden is to prove discrimination by a preponderance of the evidence").
 
 
 [9]
 In Aikens, the trial court required plaintiff to offer direct proof of discriminatory intent and to show, as part of his prima facie case, that he was "as qualified or more qualified" than the people who were promoted. The D.C. Circuit reversed and remanded with instructions for the district court to reconsider its earlier finding that plaintiff had not made out a prima facie case. Aikens v. United States Postal Serv. Bd. of Governors, 665 F.2d 1057 (D.C.Cir.1981). The Supreme Court reversed the D.C. Circuit, holding that the issue on remand after a full trial is not whether plaintiff made out a prima facie case, but whether "the defendant intentionally discriminated against the plaintiff." Aikens, 460 U.S. at 715, 103 S.Ct. at 1482