[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 17, 2003
THOMAS K. KAHN
CLERK

_____

No. 01-14069
_____

D.C. Docket No. 96-03133-CV-RWS

ELIZABETH STEGER,

Plaintiff-Appellant-
Cross-appellee,

versus

GENERAL ELECTRIC COMPANY,

Defendants-Appellees-
Cross-appellant.

_____

Appeals from the United States District Court for the
Northern District of Georgia

_____

**(January 17, 2003)**

Before BIRCH, HILL and HALL*, Circuit Judges.

BIRCH, Circuit Judge:

_____

* Honorable Cynthia Holcomb Hall, United States Circuit Judge for the Ninth Circuit, sitting by designation.

Elizabeth Steger appeals the district court's judgment for General Electric Company ("GE") following jury verdicts for GE and the denial of her motions for judgment as a matter of law. In her complaint, Steger claimed that, during the course of her employment, GE violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621-634, by terminating her during a reduction in force based on her age, and violated the Equal Pay Act, 29 U.S.C. § 206(d), by paying her differently than her male colleagues.[1] On appeal, she argues that GE failed to meet its burden of persuasion on her age and gender claims. She also maintains that the district court erred by permitting GE to introduce evidence on an affirmative defense which it had not raised in its answer, precluding her from introducing evidence of bias, refusing to allow her to amend the complaint to add the bankruptcy trustee as a necessary party, and denying her motion for new trial. Because we find that GE met its burden of persuasion, and that the district court did not err in its challenged rulings or abuse its discretion in denying her motions to amend or for a new trial, we AFFIRM.[2]

---

[1] Although Steger's initial complaint set forth other claims, only the ADEA and EPA claims, which proceeded to jury verdict, are addressed in this appeal.

[2] Because we affirm the district court's judgment for GE, we will not address GE's cross-appeal of the district court's allowance of statistical evidence without expert support.

# I. BACKGROUND

A. Steger's Employment History

Elizabeth Steger was hired by GE in 1970 and, during the course of her employment, worked in collections.[3]  In 1991, GE eliminated the Corporate Financial Services Organization (CFSO), which had provided billing, collection, and accounting support to GE's various businesses, and set up a "Customer Account Support Organization" ("CASO") in which the employees were hired as "individual collectors" or "credit specialists."  R34 at 230; R36 at 712-13.  The employees hired as collectors included some individuals who had previously held positions as supervisors and as managers.  Steger was assigned to CASO as a credit collector or specialist and was responsible for securing the payment of large invoices from GE's domestic customers.  Steger, who had previously worked as a collector in the Corporate Pool component of the CFSO, received numerous awards, commendations, and high evaluations in her prior positions and in CASO and was

---

[3]  Steger was hired through an employment agency.  She testified that "the lady in the employment agency" filled out the paperwork for GE and misstated Steger's age as 29 instead of her actual age of 34.  R40 at 38-39.  Steger explained that, about 15 years later, she attempted " to set the record straight" by giving her district manager a copy of her birth certificate and requesting that he notify human resources.  Id. at 40-42.  She said that, after she received the paperwork in 1995 regarding retirement and realized that her birth date had not been corrected, she sent her manager a letter explaining her earlier attempts to correct it.

"next to the highest in terms of productivity" from August 1994 to March 1995. R42 at 281-82.

CASO was initially supervised by Wade Sperry and managed by Sam Player and Rick Crookes. Sperry, Player, and Crookes hired 14 employees for CASO from the 25-30 former Corporate Pool collectors. The salaries in CASO were initially set by Sperry, in his position as manager of the financial operation for the customer service division of GE's power systems, and later by either Bill Heskett or Tom Blanckaert. Consistent with GE's practice at the time, the employees who had previously worked in Corporate Pool retained their previous salaries.

All of the collectors performed the same job, which required the same skills, effort, and responsibility, and which was performed under similar working conditions. In 1991, the salaries of the female CASO collectors ranged from $27,300 to $42,500; the salaries of the male CASO collectors ranged from $31,100 to $59,400. In 1991, Steger earned $33,500, the same as one female collector and one male collector, and more than two female collectors and two male collectors. Between 1991 and 1995, the average increase in compensation for female CASO collectors was 22.8%, the average increase for male employees was 18.3%, and the average increase for former managers, all of whom were male and who received "lump sum" increases, was 12%. R36 at 749-51. By 1995, the female CASO

4

collectors' salaries ranged from $32,000 to $51,500; the male CASO collectors' salaries ranged from $36,300 to $61,600. In 1995, Steger earned $38,600, which was more than one female collector and the same as one male collector.

In April 1995, Steger was terminated from her employment with GE during a reduction in force ("RIF"). At the time of her termination, Steger was 60 years old and had worked for GE for 25 years. The RIF was conducted under a written company policy. The policy provided that the company manager complete a "Layoff Determination Comparison Matrix" on "employees who report to him/her who are to be placed on layoff" by assigning a score in the areas of "Performance," "Productivity/Contribution," "Adaptability/Versatility," "Criticality Skills," and "Company Service."[4] R42 at 315-16; Pl. Ex. 1 at 8 & Ex. 1. The matrix did not factor age or retirement eligibility. Although the terms for the rated criteria were not defined within the policy, a memo provided guidelines to be used in "assign[ing] numbers to the different categories."[5] R44 at 577; R42 at 341; Def. Ex.

---

[4] The ranking was on a ten point scale, ranging from a high of one to a low of ten.

[5] The guidelines were provided in a memo entitled "Layoff Determination Comparison Matrix Assumptions." Def. Ex. 36. The policy required that a manager complete the Matrix using criteria which were "work related and as objective as possible." Pl. Ex. 1 at 8. Jane Elliott, the former financial services manager, testified that she met with Jeff Whittingham, who was responsible for domestic collections, and David Tardiff, who was responsible for foreign collections, to "[go] through the matrix assumptions and what they meant . . . to make sure we were all on the same page . . . that we were looking at these categories in much the same way." R44 at 582; see also R43 at 468 (Elliott testified that they discussed "how the numbers would be assigned in the performance category"). GE human resources manager Robert Michael Powers testified that the

36. Steger, and other GE employees, were scored by GE manager Jeffrey Whittingham. In scoring the employees, Whittingham relied upon his conversations during 1994 and 1995 with Player, and the employee's evaluations.

Steger's evaluation for 1994 rated her as "fully meet[ing]" the expected performance and indicated that she was "selectively promotable." Def. Ex. 51. Within the evaluation comments, Player had noted that Steger was

> effective in getting her customers to pay large invoices, but the detail part of the job is not effectively covered.[] She needs to understand the research part of the job which eliminates the small items in her assignment and to gain a fuller understanding of the CASC system. She loses respect of her co-workers by transferring past due items without calling first.

Id. In the Development Planning section, Player stated that Steger should "[c]ontinue in [her] present assignment," but that she "would be more effective in a supervised position." Id. Whittingham testified that he remembered Player telling him some specifics regarding Steger's performance including "her not passing or passing back past dues and things of that nature," R43 at 506, "that she was on the low end of fully satisfactory, [] sometimes didn't follow up on accounts, was argumentative, and didn't have the best relationships with people," id. at 509, and that she was "abrupt" and had problems getting along with her coworkers. Id.

_____

terms, with the exception of the number of years of service that an employee had worked for the company, were subjective.

Whittingham said that Player advised him that Steger "was a person who had a career with GE that was limited principally in the collections area thereby making her adaptability in the long term fairly narrow." Id. at 523. Player testified that, in January 1995, he criticized Steger regarding the misapplication of cash and advised her that she could be fired for "handling accounts like this." R44 at 712-13.

Once the comparison matrix was completed, the data was compiled into a "RELATIVE MATRIX" which listed 59 employees who were subject to possible layoff. Pl. Ex. 54. Steger was listed as number 55 on the relative matrix. Jane Elliott, as financial services manager, reviewed the matrix and committed to a head count reduction of 11, leaving her 47 employees. After the matrix was reviewed and approved by GE's human resources and legal departments, the layoffs were implemented.

Although GE notified most of the employees subject to layoff in March 1995, GE delayed Steger's layoff until April 1995 to allow her to qualify for a Special Early Retirement Option ("SERO"), which required the elimination of the employee's position, approval by the employee's supervisor, and an employee of at least 55 years of age and 25 years of service. However, a few days before Steger received official notification of the layoff, she provided GE with a copy of her birth certificate showing that she was born in 1934 instead of 1939. Because her birth

7

certificate showed that she was 60, instead of 55, years old, Steger was entitled to normal retirement and a special lump sum payment of approximately $17,000. After Steger's layoff, the financial function in the office where she had worked was shut down, her position was eliminated, and her workload was redistributed to other employees at other locations.

## B. Legal Proceedings

Steger filed a complaint claiming that she was terminated based on her age and that her pay had differed from that of her male co-workers based on her gender. GE set forth 24 affirmative defenses in its answer. The affirmative defenses alleged, inter alia, that Steger's Equal Pay Act claim was barred by the statute of limitations, that GE's employment decisions were based on legitimate, nondiscriminatory reasons, that GE acted in good faith, and that Steger could not establish a cause of action under the Equal Pay Act.

Through discovery, Steger asked GE to explain the alleged gender-based salary disparity:

> Please state in full detail every legitimate business reason and/or other factor used in determining the salary paid to employees of [GE's] Power Systems Group and identify each and every individual who played a decisionmaking, consultative, and/or advisory role in determining the salary to be paid to the employees of the Power Systems Group.

8

R1-15, Ex. A at 6. GE objected to the interrogatory as "overly broad, unduly burdensome," and seeking irrelevant information. Id., Ex. C at 8. After Steger filed her motion to compel an answer, the district court found that Steger was "entitled to all available information used in determining salaries for 1994 through 1996," "[t]o the extent employee salaries [for those years] are based on factors and statistical data." R5-51 at 6. GE filed a supplemental response to Steger's interrogatory stating that "[b]ased upon the Court's Order and the Parties' Consent Order, . . . there is no responsive data," R8-122, Ex. D at 2, and an amended response in which it referred Steger to its supplemental response to another interrogatory "for the identities of the Mangers who would have played a decision-making role in the salary of the respective employee." Id., Ex. A at 6.

Steger filed two motions seeking to preclude the introduction of evidence on GE's affirmative defenses to the Equal Pay Act violation. Specifically, Steger sought to "forbid [GE] from attempting to introduce any 'responsive data' (i.e., evidence) to explain the stark disparity between the salaries of men vs. women, R8-120 at 3 and "evidence in support of any of the affirmative defenses under the Equal Pay Act." R13-228 at 1. The district court denied both motions. The Equal Pay Act claims were discussed at the pretrial conference. Steger's attorney suggested that, by responding that they did not have any information regarding the pay

9

disparities, GE had discredited Player's testimony "as to what he believed" were the reasons for the pay disparities. R16 at 35. GE's counsel responded that

> if there is a problem about Sam Player's testimony on that point, we have adopted it. We put in our supplementation. [Steger] can use that. We're not trying to run from Sam Player. . . . We haven't repudiated his testimony. [Y]ou're right, the jury would have to decide what they believe.

Id. at 37. GE's counsel clarified the discovery process and that Player had testified that the males "making more money than women" were previously managers who had retained their previous salaries just as the other men and the women transferred into the newly restructured collections department had retained their salaries. Id. at 38-39. GE's counsel explained that their

> theory of the case . . . is that if, in fact, we have a salary kind of retention program when people come into the program, then that can account for the difference and that can be a non sex-related difference. Then you look at the treatment after that, and . . . we are going to offer evidence that the treatment after that is that women . . . got twice as much on average in terms of the percentage increase.

Id. at 40. Steger did not object.

GE moved to preclude Steger from referencing or introducing evidence "of sexist comments or discrimination." R8-141 at 1. GE cited Steger's deposition testimony that she believed that Player's "alleged comment about her having the old southern charm" was sexist, id. at 2-3, and argued that such evidence was irrelevant because she was not "pursuing a claim of sexual discrimination," id. at 2, and that

10

Player's comment was remote in time, unrelated to the termination of her employment, and unfairly prejudicial. Steger responded that Player's comments were relevant to the Equal Pay Act claim because they showed that "gender [wa]s something . . . on Mr. Player's mind." R17 at 105-07. When the district court inquired about Player's role in setting Steger's pay, and GE responded that, although "there was no decision-making process" when the employees were first hired for CASO, Player subsequently made recommendations about the pay of the employees that he supervised.[6] Id. at 107-08. However, GE argued that the comments were irrelevant and unfairly prejudicial because they did not relate to Steger's pay. Steger countered that Player's comment to her that she had "a husband to take care of [her]" related to her pay. Id. at 110. The district court granted GE's motion finding that Player's "thoughts or biases" were not relevant because he was not a decision maker involved in setting Steger's pay when she was initially employed in CASO.[7] R18 at 150.

---

[6] GE later acknowledged that Player "may have had a role [in setting the initial pay] for some people" transferred into CASO. R17 at 119.

[7] After the district court's announcement of its decision, Steger argued that Player's testimony was relevant because it showed his motivation in perpetuating the salary differences. After discussion on whether or not Steger's Equal Pay claim covered both the initial differences and the continuation of those differences, the court announced that it would reconsider the issue later that afternoon. Even though some of the afternoon proceedings were transcribed, the court's ruling is not included in that transcript. There is no other transcript filed for proceedings on that day. However, as both parties agree that the motion was denied and for the reason presented in the district court's initial determination, we will treat the matter as resolved on that basis.

About three months before trial, Steger filed for bankruptcy protection. Three weeks before trial, she moved to amend her complaint to add the bankruptcy trustee as a party. The district court denied the motion.

The trial commenced on both claims in January 2001.[8] At the conclusion of the evidence, Steger moved for a directed verdict on the Equal Pay Act claim. The district court reserved ruling on the motion and sent the issue to the jury. The jury returned a verdict for GE on the Equal Pay Act claim, but did not reach a verdict on the age claim and the judge declared a mistrial on that claim.

At trial, Sperry testified that GE had a discretionary salary retention practice in which the salary remained the same for a demoted employee, and that the practice had existed during his entire 28 years with GE. He said that he had the authority as the financial services manager to decide whether or not to exercise his discretion for a salary retention but was also responsible for explaining the reason for a salary retention. GE compensation manager Steven Lawrence added that the human resources department advised the managers regarding the use of the salary retention practice. Lawrence explained that the practice allowed GE to maintain experienced and knowledgeable employees within the company, bolstered employee morale, and saved GE the cost of training new employees. He testified

---

[8] Although trial initially commenced in March 2000, a mistrial was declared and the case was rescheduled.

12

that, during his 15 years as compensation manager, the salary retention practice was used on numerous occasions and was applied to both men and women.

Sperry testified that, under the "salary retention" practice, the employees who moved into CASO from Corporate Pool were given a "best possible offer" which provided that their salary or level would be retained on transfer. Id. at 707. Rosetta Hooker, a CASO collector who had been employed with GE for 27 years, testified that all of the employees who had worked for Corporate Pool and were hired for CASO retained their salaries. She said that the former managers who became CASO collectors were used as resources by the other collectors based on "their experience" in particularized areas such as financial reporting, computers, management, and legal process. Id. at 775-77. Hooker and Player each commented that they were unaware of anyone who had worked for GE whose salary had decreased as a result of downsizing.

Joe Kulkus, whose cost accounting and manufacturing job was eliminated, received a "best possible offer" of $63,000 from human resources for a position in CASO in February 1992. R35 at 283-84; R36 at 791-92. Kulkus's offer, a high salary in CASO, was for the same salary that he had been making in his previous position as an auditor, was approved by the manager at that time, either Blanckaert or Heskett, and was made to Kulkus through human resources. Kulkus's

performance was considered one of the worst in CASO but his salary remained the same during his employment.

About one month after the trial on the gender claim, the trial began on the age claim. During the trial, both Whittingham and Elliott testified that age was not a factor in Steger's layoff.[9] Elliott explained that the reasons for the reduction in force were economic. She said that, based on the restructuring of GE's collections departments, GE found that it "had more folks on the collection team than the business would support" and that, based on "a brutal downturn," they "had no alternative business-wide but to reduce our cost structure." R44 at 568-69. As the "responsible manager" for deciding who would be laid off, id. at 570, she said that she made the decision "as fair and consistent as possible across the organization," id. at 583, after she reviewed the "performance based factors on the matrix" without regard to the listed employees' ages.[10] R43 at 475.

---

[9] Whittingham explained that he prepared the matrix "without prejudice based on age, race, friendship or any other element." R44 at 660. Elliott said that she "never knew" the ages of the employees listed on the matrix. R43 at 474, 475 ("I really didn't know anyone's age. . . . I can tell you a little bit about the people that would tell you why their score was what it was, and it didn't have anything to do with age"), 477 ("I did not know their age."); R44 at 593 (when asked "was age a factor in this ranking," Elliott responded "No, it really wasn't"). Elliott stated that she had received training from GE regarding age discrimination and that posters prohibiting age discrimination were posted in the workplace.

[10] When asked "what was a factor in the [matrix] ranking," Elliott responded, "What was a factor in the ranking was the performance attributes of the employee measured against the business needs of the business." R44 at 593.

14

At the close of the evidence, Steger moved for judgment as a matter of law, arguing that GE had failed to show a legitimate, nondiscriminatory reason for Steger's inclusion on the list of those to be fired. Steger also moved for a directed verdict on GE's affirmative defense that Steger would have been terminated even absent a discriminatory animus. The district permitted the issue "to go to the jury but only on the basis" that her score on the matrix would have caused her to be subject to the RIF "regardless of her age," concluding that there was no evidence that Steger would have been eliminated as a result of an operations consolidation. R44 at 805-06; R45 at 833-35. The jury returned a verdict finding that age was a substantial or motivating factor in Steger's termination, but that she would have been terminated anyway. Steger renewed her motions for judgment as a matter of law as to both the age and Equal Pay Act claims, but the motions were denied. Steger appealed and GE cross-appealed.

On appeal, Steger argues that GE failed to show that she would have been terminated independent of her age, failed to proffer legitimate, nondiscriminatory reasons for her termination, and failed to prove that the disparities in pay were gender-neutral. She also contends that the district court erred in permitting GE to introduce evidence on an affirmative defense not raised in its answer, precluding Steger from introducing comments by her supervisor which showed a bias against

15

paying women and men the same salary, failing to grant a new trial, and refusing to permit her to amend her complaint to add the bankruptcy trustee as a necessary party. On cross-appeal, GE argues that the district court erred by permitting Steger to introduce statistical analysis which was merely correlation without expert testimony, and by denying GE's motion for late designation of statistical experts.

## II. DISCUSSION

1. ADEA Claim

Steger argues that the district court erred by denying her motion for judgment of matter of law on her claim of age discrimination because GE did not show that Steger would have been terminated regardless of her age. She maintains that, based on the lack of evidence, GE failed to satisfy its burden of showing a legitimate, nondiscriminatory reason for her termination. We review the denial of a motion for "judgment as a matter of law de novo, applying the same standards utilized by the district court," and determine whether there was a "'legally sufficient evidentiary basis for a reasonable jury to find for th[e] party on th[e] issue'" considering "all of the evidence and reasonable inferences arising therefrom in the light most favorable to the nonmoving party." Richardson v. Leeds Police Dept., 71 F.3d 801, 805 (11th Cir. 1995) (per curiam) (quoting Fed. R. Civ. P. 50(a)(1)). A motion for judgment as a matter of law should not be granted if a reasonable and fairminded jury

16

exercising impartial judgment might reach a different conclusion based on the evidence. Walls v. Button Gwinnett Bankcorp., Inc., 1 F.3d 1198, 1200 (11th Cir. 1993).

After the plaintiff establishes a prima facie case of age discrimination, the burden shifts to the defendant to articulate a "'legitimate, non-discriminatory reason'" for its employment decision. O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 311, 116 S. Ct. 1307, 1309 (1996) (quoting McDonnell Douglas Corp v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973)). The defendant's burden is met, and the presumption of discrimination is rebutted, when "the defendant's [admissable] evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff" with clear reasons for its decision. Texas Dep't. of Cmty. Affairs v. Burdine, 450 U.S. 248, 254-55, 101 S. Ct. 1089, 1094 (1981). The defendant may not satisfy this burden by mere argument but must present evidence of the legitimate reason for its decision. Payne v. McLemore's Wholesale & Retail Stores, 654 F.2d 1130, 1144 (5th Cir. Unit A Sept. 1981). When the employee has shown that the employment decision was based on an illegal motive, the employer may avoid liability by proving by the preponderance of the evidence that the decision would have been made the same in the absence of discrimination. Price Waterhouse v. Hopkins, 490 U.S. 228, 252-53, 258, 109 S.

17

Ct. 1775, 1791-92, 1795 (1989); see also Pennington v. City of Huntsville, 261 F.3d 1262, 1269 (11th Cir. 2001). The employer's evidence "must show that its legitimate reason, standing alone, would have induced it to make the same decision." Price Waterhouse, 490 U.S. at 252, 109 S. Ct. at 1792. An employer cannot prevail where the "legitimate reason did not sufficiently motivate the employer at the time of the decision." Speedy v. Rexnord Corp., 243 F.3d 397, 402 (11th Cir. 2001). "[P]roving that the same decision would have been justified absent a retaliatory motive is not the same as proving the same decision would have been made absent the motive." Id.

The evidence of the legitimate reason, therefore, must also stand on its own. A "same decision" defense can be sufficiently supported by evidence showing the "plaintiff's submission of a false certification" and misconduct, Lewis v. Young Men's Christian Ass'n, 208 F.3d 1303, 1306 (11th Cir. 2000) (per curiam), a competing job candidate's better qualifications, Harris v. Shelby Co. Bd. of Educ., 99 F.3d 1078, 1084 (11th Cir. 1996), or the plaintiff's lack of qualifications for a promotion based on reprimands for poor performance and falsification of documents, tardiness, a negative attitude, and communication difficulties. EEOC v. Alton Packaging Corp., 901 F.2d 920, 925 (11th Cir. 1990). The defendant's subjective reason for an employment action "is a legally sufficient, legitimate,

18

nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion." Chapman v. AI Transport, 229 F.3d 1012, 1033 (11th Cir. 2000) (en banc). A defendant may not merely state that the employment decision was based on the hiring of the "best qualified" applicant, but must articulate specific reasons for that applicant's qualifications such as "seniority, length of service in the same position, personal characteristics, general education, technical training, experience in comparable work or any combination" of such criteria. Increase Minority Participation by Affirmative Change Today of Northwest Florida, Inc. (IMPACT) v. Firestone, 893 F.2d 1189, 1194 (11th Cir. 1990). The introduction of "personnel records which *may* have indicated that the employer based its decisions on one or more of the possible valid grounds" will not suffice to meet the defendant's rebuttal burden. Id. The evidence must include facts which show what the decision-maker knew at the time when the decision was made. Walker v. Mortham, 158 F.3d 1177, 1182 n.8 (11th Cir. 1998). Further, we will not consider issues or evidence which a party failed to properly preserve the issue in the district court. Morro v. City of Birmingham, 117 F.3d 508, 515-16 (11th Cir. 1997).

During the district court's consideration of the jury instructions, Steger moved for a directed verdict on the "same decision" defense and argued that GE

should not be permitted to submit evidence to the jury of a proposed consolidation of services in 1994 or that she had lied about her age on her employment application. R44 at 802-04; R45 at 833-34. After the district court noted that the evidence supported Steger's selection for layoff based on her performance and matrix score, Steger responded that she had "no problem" with GE's same defense "contention" so long as the consolidation and "her age thing" were not considered. R44 at 803-04. The district judge granted Steger's request and permitted the same defense issue "to go to the jury but only on the basis of the score would have gotten her out anyway." Id. at 805-06; see also R45 at 833-035. Steger thus consented to the submission of GE's defense that it would have made the same decision based on her performance and matrix score.

GE's evidence was sufficient to support the "same decision" defense to the jury. GE demonstrated that Steger's layoff resulted from economic necessity, the reorganization of the collections' departments, and a comparison of Steger's performance with that of her coworkers. The evidence showed that GE relied on current and past manager summary evaluations of Steger's performance, her Career Forecast Summary, and her supervisors' knowledge of her performance in preparing her matrix ranking. The evaluations, summary and supervisors' knowledge revealed that, despite Steger's satisfactory performance in collections,

she had limited transferable skills, had problems with communications and interpersonal relationships with her co-workers, and had misapplied funds. Therefore, although Elliott's and Whittingham's decisions were partially subjective, their judgment was based on specific objective factors. Further, both Whittingham and Elliott testified that age was not a factor in their decisions regarding Steger's employment. Because her layoff was attributable to her matrix score whether or not age was a consideration, the jury verdict was supported by sufficient evidence. The district court did not err in denying Steger's motion for a directed verdict and for judgment as a matter of law.

B.  Equal Pay Act Claim

1.  GE's Affirmative Defense Evidence

Steger argues that the district court erred by permitting GE to introduce evidence on affirmative defenses to the Equal Pay Act claim which it did not plead in its answer. She specifically contends that GE's defenses to the salary disparities were neither pled nor identified prior to trial. The pleading of an affirmative defense is mandated by Federal Rule Civil Procedure 8(c) to be presented in a responsive pleading, and a party waives its right to advance an affirmative defense by failing to assert it in such. American Nat'l Bank of Jacksonville v. FDIC, 710 F.2d 1528, 1537 (11th Cir. 1983). However, issues not raised in the pleadings may

21

be treated as if they were properly raised when they are "tried by express or implied consent of the parties," Federal Rule of Civil Procedure 15(b), or are included in a pretrial order. Drill South, Inc. v. International Fidelity Ins. Co., 234 F.3d 1232, 1239 (11th Cir. 2000) (per curiam).[11]

Although GE did not include an explanation of the salary disparities in its answer, the defense was raised and discussed at length at the pretrial conference. GE clearly stated that its "theory of the case" regarding the Equal Pay Act claim was that they had "a salary . . . retention program" which provided for an employee's salary to be retained when their assignment was changed, accounted for the differences in pay, and was non-gender related. R16 at 38. Because Steger did not object, the district court did not err in permitting evidence on this issue at trial.

2. Sufficiency of the Evidence

Steger contends that GE failed to meet its burdens of production and persuasion to show that the differences between her salary and those of her male co-workers fell with one of the allowed exceptions to the Equal Pay Act. She maintains that the evidence was, therefore, insufficient to justify the jury's verdict regarding the pay differential. She argues that the managers who testified failed to

---

[11] Because consent of the parties is a condition precedent to an amendment pursuant to Fed. R. Civ. P. 15(b), Rule 15(b) is not applicable if a party objects to the assertion of a claim without the filing of a supplemental pleading. Pleming v. Universal-Rundle Corp., 142 F.3d 1354, 1358 (11th Cir. 1998).

deny that sex was a factor in permitting the salary disparities to continue. She also asserts that the reason given for the pay differences, the salary retention practice, was not sufficient to justify the pay disparity. Finally, Steger declares that the district court erred in granting GE's motion to preclude Player's sexist comments.

An employee demonstrates a prima facie case of an Equal Pay Act violation by showing that the employer paid employees of opposite genders different wages for equal work for jobs which require "'equal skill, effort, and responsibility, and which are performed under similar working conditions.'" Irby v. Bittick, 44 F.3d 949, 954 (11th Cir. 1995) (quoting Corning Glass Works v. Brennan, 417 U.S. 188, 195, 94 S. Ct. 2223, 2228 (1974) and 29 U.S.C. § 206(d)(1)). Once the employee presents a prima facie case, the employer may avoid liability by proving by a preponderance of the evidence that the pay differences are based on "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) . . . any other factor other than sex." 29 U.S. § 206(d)(1). The burden to prove these affirmative defenses is heavy and must demonstrate that "'the factor of sex provided *no basis* for the wage differential.'" Irby, 44 F.3d at 954 (quoting Mulhall v. Advance Sec., Inc., 19 F.3d 586, 590 (11th Cir. 1994). Further, the employer must show that none of the decision-makers,

23

whether in middle or upper management, were influenced by gender bias.[12]  See

Anderson v. WBMG-42, 253 F.3d 561, 566 (11th Cir. 2001).  Although an

employer may not rely on a "*general practice*" as a factor "other than sex,"

IMPACT, 893 F.2d at 1194, it may consider factors such as the "'unique

characteristics of the same job; . . . an individual's *experience*, training or ability; or

. . . special exigent circumstances connected with the business.'" Irby, 44 F.3d at

955 (quoting Glenn v. General Motors Corp., 841 F.2d 1567, 1571 (11th Cir.

1988)).  An employer's evidence of its routine practices is relevant to prove that its

conduct at a particular time conformed to its routine practices.  Federal Rule of

Evidence 406.   Once the employer's burden is met, the employee "must rebut the

explanation by showing with affirmative evidence that it is pretextual or offered as

a post-event justification for a gender-based differential."  Irby, 44 F.3d at 954.  The

district court's factual finding "that an employer has . . . shown that sex provided no

basis for the pay disparity" is reviewed for clear error.  Schwartz v. Florida Bd. of

Regents, 954 F.2d 620, 623 (11th Cir. 1991) (per curiam).

GE presented testimony that its salary retention practice had been uniformly

applied to both men and women for decades and that no one was aware of any

---

[12]  The testimony as to the reasons for a decision by someone who was not employed by the employer at the time of the decision will not be considered. See Increase Minority Participation by Affirmative Change Today of N.W. Fla., Inc. v. Firestone, 893 F.2d 1189, 1194 (11th Cir. 1990).

deviations from this practice. Sperry testified that the salaries were retained for all of the collectors transferred into CASO, and that the retention plan had been uniformly utilized during his twenty-eight-year career with GE. R36 at 703-04. Lawrence explained that the salary retention practice allowed GE to retain experienced and knowledgeable employees, bolstered employee morale, and saved the cost of training new employees. Hooker testified that the former managers who received salary retention were used as resources by the other collectors in areas such as financial reporting, management, and legal accounting. The evidence also showed that the employees with higher salaries, who were male, received lower raises than the employees with lower salaries, who were female. Because the evidence showed that the salary retention plan was justified by "special exigent circumstances connected with the business," Irby, 44 F.3d at 954, and because there was no evidence which rebutted GE's explanation, the district court did not err in submitting the matter to the jury or in denying Steger's motion for judgment as a matter of law.

Steger argues that the district court erred in precluding Player's sexist comments because they were admissable as evidence of pretext. She contends that her proffer of testimony addressed Player's comment to Steger that she did not need a raise because she had a husband who would care for her. To rebut an employer's

25

legitimate nondiscriminatory reasons for its adverse action, the employee must produce evidence which directly establishes discrimination or which permits the jury to reasonably disbelieve the employer's proffered reason. Ross v. Rhodes Furniture, Inc., 146 F.3d 1286, 1290 (11th Cir. 1998). Any believable evidence which demonstrates a genuine issue of fact regarding the truth of the employer's explanation may sustain the employee's burden of proof. Id. at 1291. A decision maker's discriminatory comment which may not qualify as direct evidence of discrimination may constitute circumstantial evidence which could assist a jury in disbelieving the employer's proffered reasons for the adverse action. Id. at 1292. Although a decision maker's statement regarding an employee's "family man" status can serve as evidence of discrimination, see Taylor v. Runyon, 175 F.3d 861, 869 (11th Cir. 1999), "statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process" at issue will not satisfy the employee's burden. Price Waterhouse, 490 U.S. at 277, 109 S. Ct. at 1805 (O'Connor, J., concurring).

Evidence is relevant and, therefore, admissible, if tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence." Fed. R. Evid. 401 & 402. "Relevancy . . . exists only as a relation between an item of evidence and a

matter properly provable in the case." Rule 401 advisory committee notes. Evidence is inadmissable if it is not relevant, Rule 402, and excludable "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Rule 403. "'Unfair prejudice . . . means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Id. advisory committee notes. The district court did not abuse its discretion in precluding evidence of Player's sexist comments because they were not relevant to Steger's Equal Pay Act claim, Player was not a decision maker, and the comments may have unfairly prejudiced GE.

3. Motion to Amend to Add the Bankruptcy Trustee

Steger argues that the district court abused its discretion by denying her motion to amend her complaint to add the bankruptcy trustee because, at the time of her motion, the bankruptcy trustee was the real party in interest and essential to the court's jurisdiction. Steger filed for bankruptcy protection in December 1999, two months before the district court set this case for trial on the 13 March 2000 calendar. Steger moved to amend the complaint on 24 February 2000, to add the bankruptcy trustee as a party based on the bankruptcy court's approval of the appointment of Steger's counsel and another attorney "to represent the Trustee in

this action."[13]  R8-121 at 1.  She indicated that she sought "to add the Trustee, rather than substitute him, in that the value of the case is such that–after payment of all indebtedness–there will be substantial assets remaining" and that she thus retained an interest in the case.  Id.

The matter was considered by the court during the pretrial conference.  At the conference, Steger's attorney explained that he had filed the motion to amend in order to protect the bankruptcy estate.  GE acknowledged that the Trustee owned the claim but argued that the Trustee was not a necessary party to the civil action because he was aware of the claim, was represented by the same attorney as Steger, and that, if there were any recovery in the action, the bankruptcy estate was protected.  The district court stated that it was not inclined to grant the motion because the estate was "clearly adequately represented.  Their counsel is a part of the case" and both GE and the district court were on notice that the bankruptcy trustee had a claim.  R16 at 42-43.  The district court noted that neither Steger nor GE was "adamant" in their positions and that, since everyone was adequately protected,  "perhaps we're better off just letting the jury deal with the parties who started this."  Id. at 43.  The district court then denied the motion with the

_____

[13]  Apparently, this action was identified in Steger's bankruptcy petition, and the Trustee retained Steger's counsel as special counsel to represent the estate in the action.  We do not have these bankruptcy court documents; although GE referenced a "Motion and Order" as exhibits, there are no exhibits included with the response found in the record.

28

understanding that everyone was on notice that the bankruptcy court had a claim that needed to be addressed and which survived in spite of the Trustee not being added as a party. After Steger's attorney suggested that the motion be carried with the case, instead of denied, the district court agreed and took the matter under advisement to permit the Trustee to be added after judgment. However, the district court subsequently entered a written order denying the motion to amend.

We review the district court's denial of a motion to amend a complaint for abuse of discretion. Henson v. Columbus Bank & Trust Co., 770 F.2d 1566, 1574 (11th Cir. 1985). All federal actions are required to "be prosecuted in the name of the real party in interest," Fed. R. Civ. P. 17(a), "to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata." Rule 17 advisory committee notes (1966). The rule, therefore, "is for the benefit of a defendant, and . . . may be deemed waived." Audio-Visual Mktg. Corp. v. Omni Corp., 545 F.2d 715, 719 (10th Cir. 1976); Fox v. McGrath, 152 F.2d 616, 618 (2nd Cir. 1945) ("the real-party-in-interest defense . . . is not jurisdictional, but is, indeed, freely waivable"). Although in bankruptcy, the trustee "succeeds to all causes of action held by the debtor at the time the bankruptcy petition is filed," Miller v. Shallowford Cmty. Hosp., Inc., 767 F.2d 1556, 1559 (11th Cir. 1985) (per curiam)

29

(permitting the bankruptcy trustee to pursue a claim on behalf of the debtor as to whether the debtor had a cause of action when the bankruptcy proceedings commenced), the debtor's standing to pursue the claim is not abandoned where she is asserting "her own legal rights and interests rather than the legal rights and interests of third parties." Saladin v. City of Milledgeville, 812 F.2d 687, 690 (11th Cir. 1987). Because "[t]he bankruptcy trustee is the legal representative of the bankruptcy estate," the debtor may not pursue a cause of action which is the property of the bankruptcy estate unless the trustee abandons the claim or participates in the cause of action. In re Alvarez, 224 F.3d 1273, 1279-80 (11th Cir. 2000), cert. denied, 531 U.S. 1146, 121 S. Ct. 1083 (2001).

The district court did not abuse its discretion in denying the motion to amend. Because the bankruptcy court had appointed Steger's counsel to represent the Trustee, the bankruptcy estate was adequately represented and participated in the action. The parties and the district court were aware of the Trustee's claim.

4. Motion for New Trial

Steger argues that the district court erred in denying a motion for new trial on both her age and Equal Pay Act claims because the jury was charged on certain affirmative defenses for which GE submitted no evidence. We review the district court's denial of a motion for new trial for abuse of discretion. Deas v. PACCAR,

30

<u>Inc.</u>, 775 F.2d 1498, 1503 (11th Cir. 1985). A district court is permitted wide discretion in considering a motion for new trial based on an erroneous jury instruction, <u>id.</u> at 1504, and we will reverse only where the instructions gave the jury "'a misleading impression or inadequate understanding of the law and the issues to be resolved.'" <u>Stuckey v. Northern Propane Gas Co.</u>, 874 F.2d 1563, 1571 (11th Cir. 1989) (quoting <u>Bass v. International Bhd. of Boilermakers</u>, 630 F.2d 1058, 1062 (5th Cir. 1980)). We will not reverse where a jury's "verdict is supported by sufficient evidence." <u>Gupta v. Florida Bd. of Regents</u>, 212 F.3d 571, 582 (11th Cir. 2000), <u>cert.</u> <u>denied</u>, 531 U.S. 1076, 121 S. Ct. 772 (2001). Because GE submitted sufficient evidence to support its affirmative defenses on both Steger's age and gender-related claims, the district court did not err in instructing the jury on these affirmative defenses and did not abuse its discretion in denying Steger's motion for a new trial.

### III. CONCLUSION

We affirm the district court's judgment for GE and denial of Steger's motions for judgment as a matter of law. We find that GE met its burdens of persuasion on both her age and gender claims, and that the district court did not abuse its discretion during evidentiary rulings or in denying Steger's motion to amend her complaint to add the bankruptcy trustee.

31

AFFIRMED.