[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 9, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-14847
Non-Argument Calendar

_____

D. C. Docket No. 05-00093-CV-CLD-3

REBECCA M. DUNCAN,

Plaintiff-Appellant,

versus

MADISON COUNTY,
WESLEY J. NASH,
Individually and as Chairman of the
Madison County Board of Commissioners,
MORRIS FORTSON, Individually and as
County Clerk of Madison County,
BRUCE SCOGIN, Individually,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

**(April 9, 2008)**

Before MARCUS, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Rebecca Duncan appeals the summary judgment in favor of Madison County, Georgia, and against her complaints of wage discrimination under the Equal Pay Act, 29 U.S.C. § 206(d), and disparate treatment, sexual harassment, and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a), 2000e-3(a).  The district court concluded that Madison County provided a legitimate reason for compensating Duncan's male predecessor at a higher pay and Duncan failed to establish a prima facie case of either sexual harassment or retaliation.  We affirm.

## I. BACKGROUND

Duncan was hired first as an appraiser in the Madison County Office of Tax Assessors, and she was later promoted to chief appraiser by the Madison County Board of Tax Assessors.  About a year after Duncan's promotion, the Madison County Board of Commissioners increased the pay scale for the chief appraiser from level 15 to level 16, but Duncan did not receive a pay increase.

The Chairman of the Board of Commissioners, Wesley Nash, later received information that the Office of Tax Assessors had committed "sales chasing" by recording the appraised value of real property when it was sold without reassessing

the value of the surrounding properties. Nash met with Duncan, Madison County Clerk Morris Fortson, and the Board of Assessors. All agreed that they would investigate the practice and ask the Georgia Department of Revenue to review the appraisal process. Nash, who was facing reelection, became concerned with Duncan's level of experience. Nash recommended that the County hire a supervisor for Duncan, and Nash increased his scrutiny of the assessor's office.

Duncan determined that Mechell Salter was responsible for the "sales chasing." Duncan asked Nash and Fortson to attend a meeting about Salter, but Fortson declined and responded that only Nash could terminate an employee of Madison County. Duncan met with the Board of Assessors and testified that Salter had changed the year on a sale of real estate. The Board of Assessors voted to terminate Salter. Nash immediately reassigned Salter to a position in Nash's office.

Nash asked the Georgia Department of Revenue to investigate the Office of Tax Assessors and the Board of Assessors. Duncan was upset by the investigation and wrote a letter to the personnel director in which she asked for "protect[ion]" from harassment caused by the continual "meddling" by Nash and Fortson. Duncan also complained about Salter's reassignment. The personnel director did not investigate Duncan's complaint, and Nash continued to scrutinize Duncan's

office. Fortson also published an article in a local newspaper in which he criticized Duncan and the Board of Assessors.

On February 3, 2005, the Board of Commissioners fired Duncan. The Board listed six reasons for Duncan's termination: insubordination, professional incompetence and negligence; dissemination of false information about fellow employees; dismissal of Salter in violation of County rules and ordinances; offensive conduct and offensive language with the public; and conduct that reflected poorly on Madison County. Duncan responded to her firing with a lawsuit.

Duncan filed a complaint against Madison County, Nash, Fortson, and Commissioner Bruce Scogin. Duncan complained that Madison County discriminated against her on the basis of sex, in violation of Title VII, and engaged in wage discrimination, in violation of the Equal Pay Act. In support of her complaint, Duncan alleged that she had been paid less than her male predecessor, Charles Anglin. Duncan also complained that the County subjected her to a hostile work environment and retaliated against her for "her assertion of her rights under law." In the remainder of her complaint, Duncan alleged that Nash violated her rights under the First and Fourteenth Amendments when he threatened to terminate her if she refused to support his reelection campaign; Nash and Fortson caused her

4

emotional distress; and Scogin defamed her.

The defendants moved for summary judgment. The defendants presented evidence that Anglin served both as chief tax appraiser and as a "GIS specialist" and had a "more specialized education, had greater duties, greater responsibilities, and indeed was entitled to greater pay." The district court granted summary judgment in favor of all the defendants.

## II. STANDARD OF REVIEW

We review a grant of summary judgment <u>de novo</u> and review the evidence in the light most favorable to the nonmoving party. <u>Brooks v. County Comm'n of Jefferson County, Ala.</u>, 446 F.3d 1160, 1161–62 (11th Cir. 2006). Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## III. DISCUSSION

Duncan challenges the summary judgment in favor of Madison County on three grounds. First, Duncan argues that she established that Madison County engaged in wage discrimination and disparate treatment because she performed the same duties as her male predecessor but received lower compensation. Second, Duncan argues that she was sexually harassed because Madison County failed to address her complaints about a hostile work environment. Third, Duncan argues

that Madison County retaliated against her after she voiced concerns about the security of records in the office of the tax assessor.

*A. Madison County Was Entitled to Summary Judgment Against Duncan's Complaint of Pay Disparity.*

Duncan's complaint of disparate pay is based on two federal statutes. The Equal Pay Act prohibits an employer from discriminating against employees on the basis of sex "for equal work on jobs the performance of which require 'equal skill, effort, and responsibility, and which are performed under similar working conditions[,]'" but an employer may base a wage difference on any factor "other than sex[.]" 29 U.S.C. § 206(d)(1); Steger v. Gen. Elec. Co., 318 F.3d 1066, 1078 (11th Cir. 2003). Title VII similarly prohibits an employer from discharging or discriminating against an employee "with respect to [her] compensation, terms, conditions or privileges of employment, because of [her] . . . sex." 42 U.S.C. § 2000e-2(a)(1).

The district court assumed, without deciding, that Duncan established a prima facie case of pay discrimination, under both statutes, and the district court concluded that Madison County provided a legitimate reason for the disparity in compensation. Madison County established that Duncan's predecessor, Anglin, performed duties as both the chief appraiser and a "GIS specialist" and received a pay classification of 16.5 to compensate him for his dual role. Duncan admitted

that she should not have received the same pay as Anglin "because [she] did not have" the same "knowledge or . . . background."

Duncan failed to present any evidence that the reason proffered by Madison County was pretextual. Duncan instead admitted that Anglin performed additional duties and was entitled to increased compensation for that work. The district court correctly entered summary judgment against Duncan's complaint of pay disparity.

*B. Madison County Was Entitled To Summary Judgment Against Duncan's Complaint of a Hostile Work Environment.*

Duncan argues that she presented evidence that she suffered a hostile work environment. We disagree. To establish a prima facie case of a hostile work environment, Duncan had to prove that she suffered harassment based on her sex that was "sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment" and was remediable by her employer. Hulsey v. Pride Restaurants, LLC, 367 F.3d 1238, 1244 (11th Cir. 2004) (citing Mendoza v. Borden, Inc., 195 F.3d 1238, 1244 (11th Cir. 1999) (en banc)); see 42 U.S.C. § 2000e-2(a)(1).

The district court assumed that Duncan could establish that she was in a protected class and subject to unwelcome harassment, but concluded that the "harassment" Duncan described in a letter to the county personnel director did not affect her work environment and was not attributable to her sex. In the letter,

7

Duncan complained that Nash and Fortson "meddl[ed]" in her office because they reinstated Mechell Salter. Duncan also alleged that she was "harassed" when the officials gave Salter access to Duncan's tax appraisal records. We agree with the district court.

A "reasonable person" would not find the efforts by Nash and Fortson to inspect Duncan's record-keeping and oversee her performance as chief tax assessor to be "hostile or abusive." Hulsey, 367 F.3d at 1244. Duncan also did not state that she was harassed because she was female. Because Duncan offered no evidence that she suffered gender-based discrimination, the district court correctly entered summary judgment against Duncan's complaint of a hostile work environment.

*C. Madison County Was Entitled to Summary Judgment Against Duncan's Complaint of Retaliation.*

Duncan argues that Madison County retaliated against her because she spoke "about concerns as to the safety of records contained within her office," but we disagree. To establish a prima facie case of retaliation under Title VII, Duncan had to prove that she was engaged in a statutorily protected activity, she suffered a materially adverse action, and there is a causal relation between the two events. Burlington N. & Santa Fe Ry. Co. v. White, 126 S. Ct. 2405, 2410–16 (2006). An employee engages in a statutorily protected expression if she "oppose[s]" a

8

practice forbidden under Title VII, such as gender discrimination, or has "made a charge, testified, assisted, or participated in" a Title VII "investigation, proceedings, or hearing." 42 U.S.C. § 2000e-3(a).

Duncan draws no connection between her concerns about the security of appraisal records in her office and an unlawful employment practice by Madison County. See Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1311 (11th Cir. 2002) ("To establish that a plaintiff engaged in statutorily protected expression, . . . a plaintiff must show that she had a good faith, reasonable belief that the employer was engaged in unlawful employment practices."). Duncan fails to provide any evidence that she engaged in statutorily protected activity. We agree with the district court that Duncan did not establish a prima facie case of retaliation.

Duncan argued in her reply brief that Madison County retaliated against her because she complained about her low wages and hostile work environment. Duncan referenced those complaints in her initial brief, but her only argument was that the County retaliated in response to her remarks about the security of records in her office. We do not consider arguments raised by the appellant for the first time in a reply brief. Davis v. Coca-Cola Bottling Co. Consol., 516 F.3d 955, 972 (11th Cir. 2008) ("presenting the argument" in a reply brief does not "resurrect" the issue).

## VI. CONCLUSION

The summary judgment in favor of Madison County is **AFFIRMED**.